ELLEN T. FOLEY, administratrix, *vs.* JOHN COAN & others.

Middlesex.    March 6, 7, 1930. — July 2, 1930.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Gift,* Causa mortis.    *Evidence,* Presumptions and burden of proof.

Where, at the hearing upon a final account of an administrator, a respondent contends that a deposit in a savings bank in the name of the intestate improperly was omitted from the account and the administrator contends that the deposit was delivered to him as a gift by the intestate when in the expectation of death, the burden of proving the gift is on the administrator and is heavier than in the case of a gift *inter vivos:* the proof must be convincing, though it need not reach the certainty required in criminal proceedings.

Upon an appeal from a decree allowing such an account of an administrator without the inclusion of the disputed bank deposit, all the evidence was reported, and it was *held,* that the judge was warranted in believing testimony of the administrator as to the gift and in explanation of acts of his which otherwise might have shown that the intestate retained control of the bank book and that the administrator recognized the deposit as a part of the estate after the death of the intestate.

The mere fact that, after the owner of a deposit in a savings bank in expectation of death has delivered the bank book as a gift to another, the donee placed the book under the pillow on which the donor was lying, where it remained until after the donor's death, did not require as a matter of law a finding that no gift *causa mortis* was made; such conduct might be shown to be consistent with an effective gift.

The mere fact, that the administrator of an estate drew, on orders signed by him as administrator, sums of money from an account in a savings bank which he contended was given to him by the intestate as a gift *causa mortis,* did not as a matter of law "affect the validity of the gift if it was otherwise valid and complete in the lifetime of the donor"; nor require a finding that no such gift was made.

PETITION, filed in the Probate Court for the county of Middlesex on July 31, 1929, for the allowance of the first and final account of the administratrix of the estate of Margaret E. Gardiner, late of Cambridge.

The petition was opposed by next of kin and a guardian *ad litem* on the sole ground that a deposit in the Cambridge

Savings Bank improperly was omitted. There was a hearing by *Harris,* J., a stenographer having been appointed under G. L. c. 215, § 18, as amended. The contestants introduced a certificate by the treasurer of the Cambridge Savings Bank as to the account then in the name of the intestate.

The only testimony admitted was that of the administratrix. The judge refused to give the following rulings asked for by the respondents:

"1. If as a matter of fact the administratrix withdrew funds from the Cambridge Savings Bank in her capacity of administratrix then as a matter of law she is obligated to account therefor on her first and final account.

"2. It is essential as a matter of law that the donee under an alleged gift *causa mortis* retain possession of the savings bank book from the time of the alleged gift.

"3. Upon all the evidence, there was not a valid gift *causa mortis* to Mrs. Foley."

He ruled as follows:

"1. That a gift *causa mortis* must be a gift completed in the lifetime of the deceased, and that, if so completed, no acts of the donee subsequent to the death of the donor though inconsistent with a previous acceptance of it as a gift, if not amounting to a renunciation, can affect its validity.

"2. That it is not essential as a matter of law that the donee of a gift of a savings bank book *causa mortis* retain possession of it from the time of the alleged gift.

"3. That the signing by Ellen T. Foley, as administratrix, of slips, which were introduced in evidence on cross-examination without objection, did not of itself affect the validity of the gift if it was otherwise valid and complete in the lifetime of the donor; and, that the evidence, if competent for any purpose, went merely to the credit of the witness.

"4. That upon all the evidence there was a valid gift *causa mortis*."

The account was allowed, and the respondents appealed.

*J. L. Hannan,* for the respondents.

*J. W. Monahan,* for the petitioner.

WAIT, J. This is an appeal from a decree of the Probate Court. No new question of law is involved. The judge of

probate found, as fact, that the intestate Margaret E. Gardiner made a completed gift to her sister, Ellen T. Foley, of a bank book and deposit in the Cambridge Savings Bank as a *donatio mortis causa.* The appellants, nephews or grandnephews of the intestate, challenge the correctness of the decision. The evidence is reported. We must examine it and form an independent judgment with regard to what it establishes as fact. In doing so we are not bound by the finding of the trial judge; but may use it in forming our opinion upon the credit to be given the testimony of witnesses whom he has seen and heard and we have not. *Osborne* v. *Craig*, 251 Mass. 169, 172.

Upon hearing upon an account of Ellen T. Foley, as administratrix of her sister, the appellants contended that she had failed to account for the savings bank book and deposit as part of the intestate's estate. There was no dispute that the intestate had owned deposits in the Cambridge Savings Bank and in the Belmont Savings Bank. She died on December 16, 1927. The administratrix contended and testified that on December 14, after her sister had been anointed by the priest and was in expectation of death, her sister handed the Cambridge Savings Bank book to her saying: "Here, Nellie, this is a gift for your kindness and trouble"; and that she took and retained it thereafter as her own. The essential issue is whether or not this constituted a completed gift, a delivery by Margaret E. Gardiner with intent to pass ownership to Ellen T. Foley, and an acceptance by the latter with intent to retain ownership, followed by actual retention of control of the book. The burden of proof here was on the accountant. *Rockwood* v. *Wiggin*, 16 Gray, 402, 403. That burden is heavier than in the case of a simple gift *inter vivos*, because it is the general policy of our legislation that disposition of property in expectation of death and to become irrevocable only in the event of death shall be by will, surrounded by the safeguards of written statement, signature, and the presence of attesting witnesses, most or all of which are lacking, ordinarily, in the case of a *donatio mortis causa.* The proof must be convincing, though it need not reach the

certainty required in criminal proceedings. *McKenna* v. *McKenna*, 260 Mass. 481.

The administratrix testified that the only persons present when the book was delivered were her sister, herself and a nurse. This nurse was not called as a witness, and no adequate effort was made to obtain her testimony. All that was done was to call by telephone upon a person of the same name whose address appeared in the telephone directory. No inquiry was made at the office from which she had been obtained. The lack of effort to secure such important corroboration of the accountant's story is not overlooked by us. The contestants did not call any witnesses; and nothing appears to show that they made efforts to find the nurse. Apparently they were content not to challenge the accountant's credibility by any evidence other than that which she presented. Another sister, who, seemingly, would benefit if the gift were held invalid, made no contest, and assented to the account. The intestate had had a home for years with the accountant, and had been cared for during illnesses by her. There is nothing in the evidence to suggest undue influence in obtaining the gift, or to throw doubt on the desire of the deceased to benefit the living sister.

The contestants argue that the possession of the donee was not maintained and that the gift was invalid in consequence. The testimony in examination and cross-examination of the accountant was not entirely consistent, but we are satisfied that she intended to assert and to maintain that after receiving the books, one to be kept as her own and one to be used in paying expenses of burial, she placed both under the pillow of the sick woman for her own convenience, and not for the use of the latter. She had taken them from a bureau drawer at her sister's request on December 12, and handed them to the sister. Pursuant to directions from the sister, she had then used the Cambridge bank book in withdrawing $100 from that bank, and had given the amount withdrawn together with the book to the sister, who handed her $35 in payment for expenses incurred by her, $20 to be given to the Foreign Missions for

Masses, and placed the rest, with the books, under her pillow. The sister later paid the attending physician from the balance. Some of the money was under the pillow at the time of her death. On December 14 the sick woman took the Cambridge bank book from under the pillow and gave it to the accountant with the words of gift, and later in the day handed her the Belmont bank book with instructions how to use it. Sometime between the fourteenth and sixteenth of December, the accountant took the Cambridge bank book again to the bank to inquire how to proceed with it. What was there said does not appear; but, in consequence of it, she obtained a withdrawal order from the sick woman. This was not used. Both books, later, were placed under her sister's pillow, and they were there when she died.

After the death, the accountant drew money from the Cambridge Savings Bank which she used in part in payment of the undertaker's bill and some other bills of the estate, upon orders which bear the word "administratrix" after her signature. She testified that she did this after going to the Belmont Savings Bank and learning that interest on the deposit there would be lost if she withdrew the money at that time, and deciding to use temporarily her own money from the Cambridge bank to avoid this loss; and that some one at the bank added the word "administratrix" to her signature without explanation to her. Payments were later made by the bank upon her signature without the addition. It is significant to us that the contestants did not offer to show what was said at the banks, and did not call officials of the banks as witnesses. This conduct implies that testimony of what was said and done would corroborate the accountant's statements and explanations.

Manifestly the judge gave full credit to the accountant's testimony. We do not see why we should not. Nothing appears which requires us to find that she did not maintain possession in herself, or that she returned the book to the dominion of her sister. No act of dominion by the sister after the gift is shown. It has been held that redelivery to the donor to hold for the donee does not invalidate the gift.

*Eastman* v. *Woronoco Savings Bank,* 136 Mass. 208.    Her conduct after the death is not inconsistent with full ownership.    Her act in placing the book under her sister's pillow does not in our opinion outweigh the rest of her testimony.    It is explicable as the act of an owner.

The order will be

*Decree affirmed.*