ABRAHAM D. GROSSMAN & another *vs.* BESSIE GROSSMAN.

Suffolk.    January 3, 1962. — February 8, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Executor and Administrator*, Suitability.  *Probate Court*, Judicial discretion.  *Words*, "Suitable person."

If the executor named in an allowed will is found to be legally competent and "a suitable person" within G. L. c. 192, § 4, his appointment as executor by the judge of probate is required and is not a matter of discretion.  [568]

On the evidence and the findings, there was no merit in a contention by the widow of a decedent that his son and daughter by a former marriage, named in his allowed will as executors, were not "suitable" persons for appointment as such within G. L. c. 192, § 4, on sundry grounds advanced by the widow.  [568–569]

PETITION, filed in the Probate Court for the county of Suffolk on December 9, 1959, for proof of the will of Benjamin Grossman, late of Boston.

Following a decree allowing the will, the petition was heard by *Keville*, J., on the matter of appointing the petitioners as executors. The respondent appealed from a decree appointing them.

*Joseph J. Hurley,* for Bessie Grossman.

*Joseph B. Abrams,* (*Robert T. Abrams* with him,) for Abraham D. Grossman and another.

KIRK, J. Bessie Grossman, the widow of Benjamin Grossman, who died November 27, 1959, appeals from a decree of the Probate Court appointing Abraham D. Grossman and Sonya S. Shuman, both children of Benjamin by a former marriage, as executors of his will executed on May 27, 1952. ·Abraham and Sonya were named as executors in the will which was allowed without objection by the judge on February 16, 1960. Upon objection by Bessie to their appointment, a hearing was had, and the judge made a report of material facts under G. L. c. 215, § 11. The evidence is reported. In these circumstances, "it is our duty to examine . . . [the evidence] and decide the case according to our own judgment; but the discretion of the judge who heard the evidence and saw the witnesses is entitled to great weight, and his decision will not be disturbed unless we are satisfied that it was clearly erroneous and not supported by the evidence." *Osborne* v. *Craig,* 251 Mass. 169, 172, and cases cited. See *Foley* v. *Coan,* 272 Mass. 207, 209. We have applied this principle of judicial review to the case and find no reason to disturb the decision of the judge.

The report of material facts, the will, and the evidence disclose the following. For more than twenty years prior to Benjamin's death, he and Abraham had been engaged in the purchase and management of apartment houses. Even before that time and prior to her own marriage, Sonya, who is two years older than Abraham, had helped her father in the conduct of his business. The father was never able to read or write English. After his marriage to Bessie in 1944, two real estate trusts were organized at different times, each issuing one hundred shares. At the time of Benjamin's death, Benjamin and Abraham each controlled fifty shares in one of these trusts. In the other trust, Benjamin, Abraham, Sonya, and Abraham's wife controlled twenty-five shares each. During each of the ten to twelve years before his death, Benjamin and his wife spent five months in Florida and three months on Cape Cod. Over these years Abraham was entrusted with the care and management of the real estate consisting of 111 apartments.

Abraham managed the property frugally and efficiently, personally collecting rents, paying bills, keeping accounts and doing most of the repair and maintenance work. His father had free access to the books and to the services of the accountant for the business.

As to the personal relations among the parties, the judge found that Abraham and Sonya are friendly toward each other despite a quarrel over a business matter in 1954; that Sonya is friendly toward Bessie; that while Abraham was never close to Bessie, his attitude toward her was always correct and respectful; and that Benjamin was never inclined to discuss with Bessie the details of business, finances or provisions of his will. It also is a fact that Bessie has four adult children by a former marriage, and that Sonya and her husband are now permanent residents of Florida.

Under the terms of Benjamin's will Bessie is to receive one third of his estate and Abraham and Sonya are to share equally in the remaining two thirds. Specifically referred to in the will as an asset of the estate is an apartment house located on Strathmore Road, Brighton. The will states that this property although standing in Bessie's name was bought entirely by Benjamin's funds with no intention to make a gift of it to Bessie. Not mentioned in the will is a parcel of property on Kilsyth Road, Brighton, which had been bought by Benjamin in Abraham's name. Upon Abraham's entering military service in 1943, he conveyed the Kilsyth Road property to his father who never recorded the deed. Bessie had it recorded when she found it among Benjamin's papers.

The judge concluded his report of material facts with the statement that Abraham and Sonya "are not unsuitable to fairly and effectively perform their duties as executors of their father's estate."

General Laws c. 192, § 4, provides: "If a will has been duly proved and allowed, the probate court shall issue letters testamentary thereon to the executor named therein, if he is legally competent and a suitable person . . . ." The appellant does not contend that the executors are not legally competent. The only question is whether they are

suitable persons. Basically the term "suitable person" connotes a person who is considered to have the capacity and the will to discharge the duties in the particular case with fidelity and efficiency. See *Davis, petitioner,* 237 Mass. 47, 49–50.

Before considering the specific grounds of unsuitability which the appellant cites, we advert to her somewhat vague argument that "it would have been the better part of discretion not to appoint the executors named in the will." We would not pause to discuss this amorphous assertion if it did not imply a misconception as to the field of discretion which is open to the judge in a petition for appointment as an executor as distinguished from a petition for letters of administration, as for example, ordinary administration under c. 193, § 1, administration with the will annexed under c. 193, § 7, administration de bonis non under c. 193, § 9, or special administration under c. 193, § 10. Cf. *Home Natl. Bank, petitioner,* 341 Mass. 286, 290–291 (extent of discretion in the appointment of new trustees under G. L. c. 203, § 5). In the case of a petition for appointment as executor under a will which has been allowed, as here, the judge is not to be concerned with the suitability of persons other than the person named in the will. He focuses his attention upon the person named and determines in the light of all the circumstances in the particular case if the person named is suitable for the office. If the person so named is suitable, the judge is obliged to appoint him. We, therefore, are not concerned, as the judge properly was not concerned, with the comparative suitability of other persons relative to the estate as might be the case where more than one petition for administration is before the court and where the judge may survey all of the petitions in the order of priority provided by the relevant statute before making an appointment. See *Stearns* v. *Fiske,* 18 Pick. 24; *Morgan* v. *Morgan,* 267 Mass. 388.

We accordingly address ourselves to the several grounds of unsuitability advanced by the appellant. First, it is said that the fact that the property on Kilsyth Road was in Abraham's name at the time of his father's death makes

him potentially a claimant against the estate and therefore
unsuitable as an executor; citing *Cogswell* v. *Hall,* 183
Mass. 575, 576–577, where a petitioning coexecutor had actu-
ally brought suit against the estate. The short answer to
this contention is that there is not the slightest intimation
in the record that Abraham has any intention of taking a
position adverse to the estate in respect to this or any other
property. If such a situation should develop, the Probate
Court has ample power to act, G. L. c. 195, § 11. See *Put-
ney* v. *Fletcher,* 148 Mass. 247, 248; *Quincy Trust Co.* v.
*Taylor,* 317 Mass. 195, 197. Second, the appellant contends
that her claim to ownership of the Strathmore Road prop-
erty places the coexecutors in a position of contest with her,
and therefore the appointment should go to a neutral per-
son. The obvious answer is that the first duty of any
executor is the protection of the estate. *Jose* v. *Lyman,*
316 Mass. 271, 278. Affirmative action may be required;
defensive action may be necessary. Fidelity in the per-
formance of such a duty does not permit of neutrality.
Third, the appellant complains that the appointment of
Abraham and Sonya gives to them together, and even to
Abraham alone, the "controlling voice" in the administra-
tion of the real estate trusts to the "utter exclusion" of
Bessie. It is plain that the terms of the will inevitably
produce this result which must be precisely what the testa-
tor intended. Fourth, it is said that the "mental attitude"
of the parties requires the appointment of a third person.
The judge found in fact that there was no ill will on the
part of the executors toward Bessie. Even if he had found
to the contrary, it would have significance only in so far as
it affected the ultimate question of suitability. *Davis, peti-
tioner,* 237 Mass. 47, 50. Abraham's industry and his long
experience and familiarity with the business were doubtless
important factors in the decision of the judge. Fifth, Son-
ya's nonresidence is no obstacle to her appointment if she
complies with c. 195, § 8. Other charges against her suit-
ability fail with those against Abraham.

*Decree affirmed.*