## ADOPTION OF DIANE.

Middlesex. November 5, 1986. — June 8, 1987.

Present: WILKINS, LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Adoption*, Dispensing with parent's consent. *Minor*, Custody. *Evidence*, Communication with social worker, Child custody proceeding, Communication between patient and psychotherapist, Privileged communication. *Privileged Communication*.

At the hearing on a petition by the Department of Social Services to dispense with the need for a mother's consent to the adoption of her minor child, the judge properly admitted, under exception (*d*) to the social worker privilege created by G. L. c. 112, § 135, testimony by three social workers concerning information acquired in conversations between them and the mother or the child. [198-200]

At the hearing on a petition by the Department of Social Services to dispense with the need for a mother's consent to the adoption of her minor child, the judge properly admitted testimony by a certain witness concerning information allegedly acquired in contravention of the patient-psychotherapist privilege created by G. L. c. 233, § 20B, where the witness was not a "psychotherapist" as defined in § 20B. [201]

At the hearing on a petition by the Department of Social Services to dispense with the need for a mother's consent to the adoption of her minor child, there was no error in admitting the testimony of a psychiatrist and a child psychologist concerning their conversations with the child, who was their patient, where neither the child's attorney nor the child's guardian ad litem chose to exercise the privilege, and where the child's mother, who was not their patient, was not entitled to challenge the admissibility of such testimony. [201-202]

In a proceeding to dispense with the need for a mother's consent to the adoption of her minor child, a judge's finding that the mother was currently unfit to assume parental responsibility, although based in large measure on evidence not related to recent events, was supported by clear and convincing evidence. [202-204]

PETITION filed in the Middlesex Division of the Probate and Family Court Department on April 11, 1983.

Adoption of Diane.

The case was heard by *John S. Macdougall, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Thomas A. Silevitch* for the mother.

*Lisa A. Levy*, Assistant Attorney General, for Department of Social Services.

O'CONNOR, J.  On January 11, 1985, pursuant to G. L. c. 210, § 3 (1985 Ann. Supp.), a judge of the Probate and Family Court Department allowed the petition of the Department of Social Services (department) to dispense with parental consent to adoption. A judge of the District Court previously had ordered, pursuant to G. L. c. 119, § 26 (1984 ed.), that the child, born June 9, 1974, be committed to the department "until she becomes eighteen years of age or until in the opinion of the department the object of her commitment has been accomplished." Her natural mother appealed the allowance of the petition to dispense with consent to adoption.[1] The mother argues that the judge improperly admitted and considered testimony of social workers and psychotherapists which should have been excluded in accordance with applicable statutory privileges. The mother also contends that the petition was improperly allowed because the judge relied on stale information in determining that she was currently unfit to assume parental responsibility. We transferred the appeal to this court on our own motion. We affirm the allowance of the petition.

The mother challenges the admission and consideration of testimony by three social workers. The department concedes that the social workers testified about information they had acquired in conversations between them and the mother or the child. The mother contends that this testimony should have been excluded under the social worker-client privilege created by G. L. c. 112, § 135.[2] That statute provides, with certain

---

[1] A 1978 divorce decree gave custody of the child to the father. He has withdrawn any objection to the adoption.

[2] General Laws c. 112, § 135 (1985 Ann. Supp.), provides in pertinent part as follows: "No social worker in any licensed category, including those in private practice, and no social worker employed in a state, county or municipal governmental agency, shall disclose any information he may

exceptions, that "[n]o social worker . . . shall disclose any information he may have acquired from a person consulting him in his professional capacity or whom he has served in his professional capacity." *Id.*

We need not discuss all the reasons advanced by the department to support the admission and consideration of the social workers' testimony, because all the challenged testimony was admissible under exception (*d*) to G. L. c. 112, § 135. Exception (*d*) provides that social workers may disclose otherwise privileged information "to initiate a proceeding under . . . section three of chapter two hundred and ten and give testimony in connection therewith." The mother argues that exception (*d*) does not apply because the social workers' involvement with the family, and the resultant conversations, did not occur in connection with the initiation of a care and protection proceeding under G. L. c. 119, §§ 23(C) or 24, nor did it occur in connection with a petition to dispense with consent to adoption under G. L. c. 210, § 3. This argument is without merit. In *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 397 Mass. 659 (1986), this court rejected an argument that exception (*d*) applies only to social workers who actually bring the petition to dispense with consent to adoption. We reasoned that the exception reflected a legislative intent to balance the goal of protecting confidential relationships with the need to protect the well-being of children, *id.* at 662, and concluded that, "[i]f the exception is interpreted to permit disclosure of information relevant to the fitness of the parents and the best interests of the children only by a social worker who actually brings a petition seeking an order to dispense with parental consent to adoption, the interest of protecting children reflected in G. L. c. 210, § 3, will be de-

have acquired from a person consulting him in his professional capacity or whom he has served in his professional capacity except:

"...

"(*d*) to initiate a proceeding under subsection C of section twenty-three of chapter one hundred and nineteen or section twenty-four of said chapter one hundred and nineteen, or section three of chapter two hundred and ten and give testimony in connection therewith; . . . ."

feated." *Id.* at 663. In support of that conclusion we noted two "practical considerations" which demanded a broader view of the exception. The first was that, because allowance of a petition to dispense with consent to adoption results in a "drastic intervention in family life," the information necessary to justify such a severe intrusion necessarily involves a detailed and searching examination of the entire parent-child relationship. Hence, a restricted interpretation of exception (*d*) would render unlikely if not impossible the appropriate resolution of proceedings pursuant to G. L. c. 210, § 3. See *id.* at 663. The second practical consideration, intimately related to the first, concerned the "realities of the provision of social work services in the Commonwealth." *Id.* at 664. We noted that in a typical situation, several social workers are involved with the family receiving services from the department, and that, frequently, the proceedings are initiated by attorneys or third parties. As a result, a narrow construction of the exception "would place an undue burden on the department and other agencies when bringing such petitions." *Id.*

Our ruling and reasoning in *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption, supra*, contain the implicit proposition that, in proceedings to dispense with consent to adoption, exception (*d*) to the statutory social worker-client privilege encompasses all testimony of social workers. There is no social worker privilege in proceedings pursuant to G. L. c. 210, § 3. See *Commonwealth* v. *Collett*, 387 Mass. 424, 433-434 (1982) (exception (*d*) "provide[s] that the privilege does not apply to care and protection proceedings"). In response to the mother's argument that the exception should not apply when the social worker's initial involvement was unrelated to care and protection proceedings or proceedings in connection with a petition to dispense with consent to adoption, we add a third practical consideration relating to the provision of social work services in the Commonwealth. The provision of services by a social agency typically is, and to be most effective should be, of an ongoing nature. Petitions to dispense with consent to adoption are brought neither lightly nor before less severe measures have been taken and efforts

have been made to reunite the family. Indeed, the department or other petitioner is entitled to initiate a proceeding to dispense with consent to adoption only if it already has "care and custody" of the child. G. L. c. 210, § 3. See *Adoption of a Minor*, 386 Mass. 741, 744 (1982). These considerations make clear that the sources of information most pertinent to G. L. c. 210, § 3, proceedings will often be social workers who have been involved with members of the family over a period of time, frequently from the onset of signs of difficulty. Hence, the restrictive interpretation suggested by the mother in this case would often deny extremely valuable and relevant information to judges who must determine questions of a factual and most sensitive nature. Accepting the mother's argument would plainly defeat the purpose of exception (*d*). It should be noted that the social worker involved in *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption, supra*, was also involved with the family long before the petitions were brought. *Id.* at 660-661. There was no error in admitting or considering the social workers' testimony in this case.

On appeal, the mother also assigns as error the admission and consideration of testimony by three other persons on the ground that their testimony should have been excluded under the patient-psychotherapist privilege created by G. L. c. 233, § 20B.[3] There was no error.

---

[3] General Laws c. 233, § 20B (1985 Ann. Supp.), with exceptions not pertinent to this appeal, provides as follows: "The following words as used in this section shall have the following meanings: —

" 'Patient', a person who, during the course of diagnosis or treatment, communicates with a psychotherapist;

" 'Psychotherapist', a person licensed to practice medicine who devotes a substantial portion of his time to the practice of psychiatry or a person who is licensed as a psychologist by the board of registration of psychologists; provided, however, that such person has a doctoral degree in the field of psychology or a registered nurse licensed by the board of registration in nursing whose certificate of registration has been endorsed authorizing the practice of professional nursing in an expanded role as a psychiatric nurse mental health clinical specialist, pursuant to the provisions of section eighty B of chapter one hundred and twelve; and

" 'Communications' includes conversations, correspondence, actions and occurrences relating to diagnosis or treatment before, during or after institutionalization, regardless of the patient's awareness of such conversa-

One of those witnesses was Alice Markowitz. Markowitz, however, was not a "psychotherapist" as defined in G. L. c. 233, § 20B, and therefore that statute did not provide the mother with a privilege to prevent Markowitz's testimony. According to her testimony, Markowitz had a degree in psychology from Vassar College and a master's degree in education from Harvard University. She also had done three years of child development research at Harvard. In *Commonwealth v. Mandeville*, 386 Mass. 393 (1982), we refused to enlarge the Legislature's definition of "psychotherapist." *Id.* at 408-409. We said in that case that "[t]he patient-psychotherapist privilege has never been recognized at common law . . . [and we] are thus not inclined to extend the patient-psychotherapist privilege beyond the bounds established by the Legislature" (citation omitted). *Id.* at 409. There was no error in admitting Markowitz's testimony.

Nor was there error in admitting the testimony of Dr. Andrea Stern, a psychiatrist, and Dr. Janet Vodvarka, a child psychologist. Dr. Stern and Dr. Vodvarka testified to the content of communications between themselves and the child, who was their patient. The mother is not entitled to challenge such testimony. General Laws c. 233, § 20B, makes clear that the privilege may be asserted only by the patient, or, if the patient is incompetent, by a guardian appointed to act on his or her behalf. See *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 399 Mass. 279, 290 n.21 (1987)

---

tions, correspondence, actions and occurrences, and any records, memoranda or notes of the foregoing.

"[I]n any court proceeding and in any proceeding preliminary thereto and in legislative and administrative proceedings, a patient shall have the privilege of refusing to disclose and of preventing a witness from disclosing, any communication, [wherever] made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition.

"If a patient is incompetent to exercise or waive such privilege, a guardian shall be appointed to act in his behalf under this section. A previously appointed guardian shall be authorized to so act.

"Upon the exercise of the privilege granted by this section, the judge or presiding officer shall instruct the jury that no adverse inference may be drawn therefrom."

("Because the privilege belongs to the patient, it appears that the burden should be on the patient to assert the privilege").[4] In a case such as this, where the parent and child may well have conflicting interests, and where the nature of the proceeding itself implies uncertainty concerning the parent's ability to further the child's best interests, it would be anomalous to allow the parent to exercise the privilege on the child's behalf. The anomaly is magnified when, as here, neither the child's attorney nor the guardian ad litem chose to exercise the privilege.

We turn now to the mother's contention that the judge improperly relied on stale information in determining that she was currently unfit to assume parental responsibility. She relies primarily on the fact that, with the exception of the guardian ad litem, the persons who testified for the department had not had direct exposure to the mother for at least one and one-half years before the trial in January and February, 1984.

The mother does not contest the sufficiency of the evidence in any other respect. In particular, except for her contention that the evidence was not sufficiently current, the mother does not challenge the judge's subsidiary findings, which included the following. The mother has been sexually, physically, and emotionally abusive to the child. Between June, 1978, and December, 1980, eight reports of abuse and neglect were filed on the child's behalf under G. L. c. 119, § 51A.[5] The child

___

[4] It does not appear that a guardian was appointed for the specific purpose of waiving or exercising the child's patient-psychotherapist privilege. See G. L. c. 233, § 20B. A previously appointed guardian ad litem was allowed to waive the privilege with respect to Dr. Vodvarka's testimony. We note, without deciding the question, that waiver by the guardian ad litem was probably an appropriate procedure. See G. L. c. 233, § 20B ("A previously appointed guardian shall be authorized to [exercise or waive the privilege on behalf of an incompetent patient]"). We need not discuss the propriety of the procedures in this case, however, because the mother is not entitled to challenge the procedures relating to waiver any more than she is entitled to challenge the admission and consideration of the psychotherapists' testimony.

[5] The child was hospitalized for psychiatric evaluation from January through April, 1981. Thereafter, she lived at a home for children until August, 1982, and since that time has lived with the foster family now interested in adopting her.

recounted incidents of physical and sexual abuse during sessions with therapists in 1981 and 1982. In therapy, "her play was overtly sexual and/or violent the majority of the time." She also exhibited self-abusive and aggressive behavior. As a result of the mother's physical and sexual abuse, the child, at the time of the trial, was terrified of her mother, could not tolerate talking about her, and was "seriously psychologically disturbed and vulnerable." During 1981 and 1982, the child became intensely upset and nervous before and during visits with her mother. After one visit, she told Dr. Stern that she was very frightened at her mother's behavior, and asked Dr. Stern not to let her mother continue visits because she was afraid that her mother would beat her. She asked the hospital staff to hide her if her mother came to the unit and seemed quite relieved when assured that the hospital would protect her from her mother.[6] The child has expressed her wish not to see her mother again. The mother has vehemently denied that she ever sexually or physically abused her child, and has never followed through with treatment to improve herself or her parenting skills, or to remedy her tendency toward abusive acts.

The judge further found that the mother is a chronic and acute alcoholic whose drinking problem dates from 1968. Several hospitals diagnosed the mother as a chronic alcoholic or alcohol abuser between 1977 and 1983. Her drinking disorder had most recently been diagnosed in September, 1983, only four months prior to trial. The mother was often intoxicated during therapy sessions in 1981. This was during the time that the child was hospitalized. See note 5, *supra*. During the same time period, she often smelled of alcohol and slurred her speech when she arrived at the hospital for authorized visits. The mother has not followed through with medical treatment for her alcohol problems. The judge did find, however, that the mother was currently attending meetings of Alcoholics Anonymous on a steady basis and seeing a counsellor at a local clinic.

---

[6] The last visit occurred in the home for children in May, 1982.

The mother also was frequently involved in fights which resulted in her being treated for injuries at various hospitals. Indeed, she was treated for injuries resulting from assaults and fights on twenty separate occasions between October, 1968, and June, 1983. Nine of those instances were spread throughout the three years prior to trial. The judge also found that the mother demonstrated her temper in the courtroom, where she yelled and screamed at witnesses on a number of occasions. She demonstrated her propensity for violence in front of therapists in 1981. She at times acted belligerently and threateningly toward social workers and therapists. During one parent-child therapy session, there was a final disruptive incident in which she shouted and threatened the hospital staff, was asked to leave, and stormed out of the session, hitting one child and pushing another aside on her way. The judge further found that the mother had little capacity for understanding her child's needs or difficulties.

We are satisfied that, although the bulk of the evidence did not relate to recent events, it nevertheless constituted "clear and convincing evidence that [the mother was] currently unfit to provide care and protection for [her child]." *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 397 Mass. 659, 670 (1986), citing *Santosky* v. *Kramer*, 455 U.S. 745, 747-748 (1982). The judge could properly rely upon prior patterns of ongoing, repeated, serious parental neglect, abuse, and misconduct in determining current unfitness. See *Petition of the Dep't of Social Servs. to Dispense with Consent to Adoption, supra* at 671; *Custody of Two Minors*, 396 Mass. 610, 621 (1986); *Petitions of the Dep't of Social Servs. to Dispense with Consent to Adoption*, 389 Mass. 793, 801 (1983). Although it is of course preferable that the issue of parental fitness be determined with the most recent information possible, there was no error in this case in the judge's finding that the mother is currently unfit to assume parental responsibility.

*Judgment affirmed.*