DISTRICT ATTORNEY FOR THE NORFOLK DISTRICT *vs.*
DAVID G. MAGRAW, executor.[1]

No. 92-P-316.

Norfolk. February 17, 1993. - July 7, 1993.

Present: KASS, IRELAND, & GREENBERG, JJ.

Further appellate review granted, 416 Mass. 1103 (1993).

*District Attorney. Probate Court,* Standing. *Practice, Civil,* Standing. *Ex-ecutor and Administrator,* Removal, Suitability. *Attorney at Law,* At-torney-client relationship. *Privileged Communication. Waiver. Grand Jury. Evidence,* Privileged communication, Communication between patient and psychotherapist.

A district attorney, on behalf of the Commonwealth, had standing to move for the discharge of the executor under the will of a murder victim, where the executor, the husband of the victim, had become a suspect in the murder of his wife and, in his capacity as executor, had declined to waive either his wife's attorney-client or psychotherapist-patient privi-lege, effectively preventing the wife's lawyer and therapist from testify-ing before the grand jury as to what she might have said about her husband, from whom she was separated. [715-716]

On appeal from the denial of a petition by a district attorney to remove a murder victim's husband as executor of her will because he had become a prime suspect in the investigation into her murder, this court con-cluded that, even if the district attorney did not have standing to peti-tion for removal of the executor, the probate judge in this case should order removal of the husband as executor and appoint an independent administrator, where the husband was unsuitable in his capacity as ex-ecutor to decide whether to waive his deceased wife's psychotherapist-patient and attorney-client privileges so that the attorney and therapist could testify before the grand jury concerning what the wife might have said about her husband. [716-720]

PETITION filed in the Norfolk Division of the Probate and Family Court Department on October 2, 1991, for the re-moval of the executor of the estate of Nancy B. Magraw.

The matter was heard by *James M. Sweeney,* J.

[1]Of the estate of Nancy Magraw.

*Robert C. Cosgrove*, Assistant District Attorney, for the plaintiff.

*J. W. Carney, Jr.* (*Andrea Petersen & Michael J. Traft* with him) for the defendant.

IRELAND, J. When David Magraw became a suspect in the murder of his wife, Nancy Magraw, the grand jury investigating her death became interested in what she might have said about her husband, from whom she was separated, to her lawyer and her psychotherapist. In her will, executed on November 17, 1978, Nancy had named her husband executor. In that ·capacity, David declined to waive either his wife's attorney-client or psychotherapist-patient privilege, effectively preventing the lawyer and therapist from testifying before the grand jury. Thereupon, the district attorney for the Norfolk district petitioned the Probate Court to remove the husband as executor because his position as a prime target of the investigation into the murder of his wife had caused him to become an unsuitable person to discharge the fiduciary duties required of the executor of the estate of his murdered wife.[2] A judge of the Probate Court denied the petition, and the district attorney brought this appeal.

1. *Facts.* We draw our facts from the grand jury minutes, the Superior Court judge's ruling on the motion, and the Walpole police department investigative report. On July 23, 1990, Nancy Magraw was found dead in her home. An autopsy indicated that the cause of her death was "mechanical asphyxiation." At the time of her death Nancy Magraw and her husband, David Magraw, were living apart and negotiating a divorce settlement. At issue in the settlement were accumulated assets valued at approximately one million dollars. Nancy was insisting on fifty percent of those assets, a demand which had greatly angered David. On the day of her death, Nancy and David had scheduled a meeting with their attorneys at the office of David's lawyer. That same morning

---

[2] A motion filed in the Superior Court to compel the lawyer and therapist to testify before the grand jury had been denied, with the judge indicating that the Probate Court was the proper forum for deciding whether an executor should be removed.

David visited Nancy at her home, arriving about 9:00 A.M. and leaving between 10:00 and 10:15 A.M. According to him, she was alive when he left. The coroner subsequently estimated that her death occurred approximately at 10:00 A.M. When Nancy failed to attend the scheduled meeting that afternoon, her attorney called her house and spoke to her son, who thereafter found her body on the floor of the living room.

2. *Standing of the district attorney.* We first consider whether the district attorney, on behalf of the Commonwealth, had standing to bring the petition to remove David Magraw as executor of his wife's estate. General Laws c. 195, § 11, which provides for the removal of executors or administrators for failure to perform their duties, is silent on the question of a petitioner's standing. "[O]nly those with a legal interest in the decedent's estate, such as legatees and creditors, have standing to seek removal." *Clymer* v. *Mayo,* 393 Mass. 754, 763 (1985), and cases cited. David argues that the district attorney's interest in privileged information is not the sort of interest in the deceased's estate which confers standing to petition for removal of an executor.

The district attorney is charged with enforcing public rights and is authorized to "appear for the commonwealth in the superior court in all cases, criminal or civil, in which the commonwealth is a party or interested. . . ." G. L. c. 12, § 27. In this case, the district attorney alleges that the testimony of Nancy Magraw's attorney and psychotherapist will shed light on Nancy's state of mind in the last days before her death and is likely to lead to information about a motive to kill her. That information would assist the grand jury's investigation and, ultimately, the prosecution of the individual(s) responsible for her murder. In his pursuit of this information, the district attorney represents the public interest in prosecuting those responsible for the crime.

As the executor of his wife's estate, David is vested with the power to exercise or waive the attorney-client privilege on her behalf. *Matter of a John Doe Grand Jury Investigation,* 408 Mass. 480, 483 (1990) (hereinafter the *Stuart* case). Cf.

G. L. c. 233, § 20B (providing for appointment of a guardian to exercise or waive the psychotherapist-patient privilege of an incompetent patient). Because he is also a target of the grand jury investigation of his wife's murder, however, the issue arises whether he is suitable to waive these confidential privileges. Further, the suitability of the executor, as it relates to his ability to decide whether to waive the privileges on behalf of his wife, directly implicates the public interest in prosecuting Nancy Magraw's murderer. In these circumstances, where the Commonwealth has a legal interest in the privileged information, it is appropriate for the district attorney to move for the discharge of an executor.

3. *Suitability of the executor.* Even if we were to conclude that the district attorney did not have standing to petition for removal of an executor, the Probate Court judge could, sua sponte, order removal of an executor who is unsuitable. *Quincy Trust Co.* v. *Taylor*, 317 Mass. 195, 198-199 (1944). G. L. c. 195, § 11. Before we address the suitability of David as executor, we acknowledge the principle that a testatrix is entitled to have her estate administered by the person she selects as executor. 1 Newhall, Settlement of Estates and Fiduciary Law in Massachusetts § 46, at 164 (4th ed. 1958). There must be serious grounds for removing an executor designated under a will. *Ibid.* When examining the suitability of an executor, a judge must focus attention on the individual named in the will, and the judge's discretion is more limited than when examining the suitability of persons other than those named in the will. *Grossman* v. *Grossman*, 343 Mass. 565, 568 (1962). If an executor is suitable to serve, he must be appointed. *Ibid.* A judge's decision not to remove an executor will stand unless "plainly wrong." *Machado* v. *Brown*, 336 Mass. 758 (1957).

An executor is considered suitable if he "has the capacity and the will to discharge the duties in the particular case with fidelity and efficiency." *Grossman* v. *Grossman*, 343 Mass. at 568. A finding that an executor is unsuitable may be based upon "[p]ast maladministration of a comparable trust, bad character, misconduct, neglect of duty, or physical

or mental incapacity. . . . [It] may also be based upon the existence of an interest in conflict with his duty, or a mental attitude toward his duty or toward some person interested in the estate that creates reasonable doubt whether the executor or administrator will act honorably, intelligently, efficiently, promptly, fairly and dispassionately in his trust. . . . Actual dereliction in duty need not be shown." *Quincy Trust Co.* v. *Taylor*, 317 Mass. at 196-197. *Altshuler* v. *Minkus-Whalen*, 31 Mass. App. Ct. 937, 938-939 (1991). An executor who has conflicting personal interests which prevent him from being a disinterested fiduciary may be deemed unsuitable. *Colbert* v. *Hennessey*, 351 Mass. 131, 144 (1966). See also *Putney* v. *Fletcher*, 148 Mass. 247 (1889). David argues that there is no evidence of misconduct in the performance of his fiduciary duties as executor. Because there was no evidence before the Probate Court with regard to Magraw's suitability to administer the financial aspects of the estate, we focus on his suitability in relation to his capacity to decide whether to waive his deceased wife's psychotherapist-patient and attorney-client privileges.

In the *Stuart* case, 408 Mass. at 483, the court reaffirmed the principle that the attorney-client privilege survives the death of the client.[3] Because the privilege belongs to the client, it "can be waived only by the client or, in some instances at least, by the executor or administrator of the client's estate." *Ibid.* (citations omitted). David argues that *Stuart* is apposite. There, the grand jury were investigating the role of Charles Stuart and others in the murders of Carol DiMaiti Stuart and Christopher Stuart. Charles Stuart's mother, Dorothy Stuart, the administratrix of Charles's estate, refused to waive his attorney-client privilege. The court concluded that in the circumstances of that case the administra-

---

[3]For the purposes of this case, we treat the psychotherapist-patient privilege in the same manner as the attorney-client privilege, that is, recognizing that it survives the death of the patient and may be waived by the executor acting in the interests of the patient. Cf. *Allison* v. *Allison*, 15 Ohio St. 2d 44, 49 (1968) (executor was the holder of confidential information protected by the attorney-client and physician-patient privileges of the deceased client-patient).

trix could not be compelled to waive the attorney-client privilege for a criminal investigation. 408 Mass. at 485-486.

That case is distinguishable from the situation presented here. In *Stuart*, the Commonwealth did not contest the suitability of the mother of the suspected killer as his administratrix or assert that she was afflicted with any disqualifying conflict. Rather, the Commonwealth sought to compel the testator's attorney to disclose the substance of conversations he had had with the testator on the day before he died. In this case, the Commonwealth is not attempting directly to override the privileges but instead is seeking to remove an executor who cannot make a disinterested decision about whether to claim the privileges or to waive them.

Second, in *Stuart*, the interests of the deceased holder of the privilege, Charles Stuart, were compatible with those of his administratrix, Dorothy Stuart. The information protected by the attorney-client privilege may have incriminated not only Charles Stuart but also his brother Matthew Stuart, who was a grand jury target. Since Charles Stuart might have wished to protect his brother and his own reputation even after his death, his interests were served by invoking the attorney-client privilege. Dorothy Stuart's refusal to waive the privilege, therefore, served her son Matthew's interests and those of the original holder of the privilege, Charles Stuart.

David has a lively interest in using his wife's privileges for his personal benefit, rather than for hers, to prevent possibly inculpatory material from being uncovered.[4] His refusal to waive the privileges appears to contradict the testatrix's best interests. Nancy Magraw was a victim. Although it is a par-

---

[4]At oral argument before this court counsel representing David contended that there is no significant distinction between this case and the *Stuart* case because both Dorothy Stuart and David Magraw were acting in their own interests in refusing to disclose the privileged information. Moreover, under the terms of Nancy's will, in the event that David is declared unfit as an executor, David's parents are designated executors. This contingency, it is argued, places this case squarely on point with *Stuart*. We believe this is a poor comparison because, as we have stated, the critical distinction between the cases still exists.

adoxical idea, it is nonetheless a common sense one that, were she alive, she would want her killer identified and brought to justice. A disinterested executor would likely conclude that Nancy's interests would be served by waiving the attorney-client and psychotherapist-patient privileges to make available evidence leading to the identification and prosecution of her murderer. In the unique circumstances of the case before us, the interests of the original holder of the privilege, Nancy Magraw, and the public's interests appear to converge. In view of David's conflict of interest, the interests of the deceased are best served by a disinterested administrator who will impartially decide whether to waive or exercise the privileges on behalf of Nancy.

In analogous situations, the exercise of a comparable privilege was disallowed or an executor was removed. In *Adoption of Diane*, 400 Mass. 196, 202 (1987), the court observed that a mother who is suspected of abusing her child "may well have conflicting interests" with her child, and, given the nature of a proceeding to dispense with consent for adoption, "it would be anomalous to allow the parent to exercise the [psychotherapist-patient] privilege on the child's behalf." In *Allison* v. *Allison*, 15 Ohio St. 2d 44, 49-50 (1968), the court decided that, because the executors' personal interests were served by their refusal to waive the deceased's physician-patient privilege, there was an inherent conflict of interest which required their removal as executors.

We have considered whether it might suffice to appoint a special administrator (see G. L. c. 193, § 10) to determine whether the testatrix's privileges should be waived, leaving the balance of duties relating to administration of the estate to the designated executor. It strikes us, however, that a person disabled as an executor by his potential desire to suppress confidences of the decedent could be tempted to deal improperly with documents (e.g., bills, letters, diaries) of the decedent that might be revealing. It is best that David Magraw be discharged as executor and that an independent administrator of the estate of Nancy Magraw be appointed by the Probate Court judge, subject to the reappointment of

David Magraw as executor, upon application, should, within a reasonable time, criminal proceedings not have been initiated against him in connection with the killing of his wife.

The case is remanded to the Probate Court for the making of orders consistent with this opinion.

*So ordered.*