Following a trial, a judge of the Juvenile Court found the mother unfit to parent the child, terminated her parental rights, and approved the adoption of the child by the preadoptive mother (who was also the foster mother).[3] In this appeal, the mother claims that the judge was biased against her and made erroneous findings. We affirm.
1. Judicial bias. The mother claims that, due to her involvement in prior proceedings before the same judge,[4] the judge was biased against her in this action. We disagree. "The law concerning recusal of a judge is well established: the decision to withdraw rests first within his sound discretion." Matter of a Care & Protection Summons, 437 Mass. 224, 239 (2002).[5]
Here, the mother did not move for the judge's recusal; "[a]lthough this does not necessarily mean there was no bias, we do take [it] into consideration when viewing the record."[6] Poly v. Moylan, 423 Mass. 141, 150 (1996). The mother claims she brought the potential for judicial bias to the judge's attention on three occasions during the trial. Putting aside whether this was sufficient to preserve the issue, the mother failed to point to anything in the record demonstrating that she did not receive a fair trial aside from the judge's references to past proceedings. The judge made multiple statements on the record indicating that he considered his ability to evaluate the matter fairly. In fact, the judge said to the mother:
"Every case rises and falls on its own merits. So, I don't want you to think for a minute that I'm going to be influenced by what happened before. But if you're really serious about what's going to happen in the future, I'll help take you through that future, and you'll get your kid back."
Furthermore, the judge provided the mother with multiple opportunities to comply with her service plan and reunify with the child, which she failed to do. "Although it is possible that an unfavorable disposition could develop during prior proceedings, where that disposition is not 'so extreme as to display clear inability to render fair judgment,' it does not warrant recusal for bias." Matter of a Care & Protection Summons, supra at 240, quoting from Liteky v. United States, 510 U.S. 540, 551 (1994). The record does not support the mother's claim that the judge was biased.
2. Erroneous findings of fact and conclusions of law. The mother also claims that the judge based the termination decision on erroneous factual findings and conclusions of law. Although one of the challenged factual findings lacks evidentiary support, it is outweighed by the totality of evidence in favor of termination.
Upon review, we give substantial deference to a judge's decision to terminate parental rights, which must be supported "by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence." Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). As for the subsidiary findings, we "reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Ilona, 459 Mass. 53, 59 (2011).
Here, the record supports the following challenged subsidiary findings. The mother has a record that includes six criminal charges, including an assault and battery dated after the child's birth.[7] The mother has a history of drug abuse, including use of heroin, marijuana, and benzodiazepine during her pregnancy with the child. The mother's substance abuse and subsequent morphine treatment placed the child in danger both before and after her birth.[8]
The mother failed to comply with tasks assigned to her pursuant to the service plan. For instance, the mother often arrived late to scheduled visits with the child and was unprepared with snacks and activities. During visits, she was inattentive to the child's needs and was often distracted by her telephone and ongoing conflicts with her parents and the foster mother. The mother's living space is cluttered and exposes the child to hazards such as cat vomit and urine, craft supplies, and drug paraphernalia. The child spent minimal time in the mother's exclusive care[9] and has bonded with the foster mother. Furthermore, two previous attempts by the Department of Children and Families (DCF) to reunify the mother with the child failed.
The mother has been inconsistent with her drug treatment: she has missed group therapy meetings and at least one dose of her methadone treatment,[10] and her medication counts have been "typically off," which raised concerns that the mother was not taking her medication as prescribed. She has not completed a residential or inpatient treatment program. Additionally, she stated that "drug rehabilitation treatment does not help her" and that, as recently as August, 2015, her sobriety was not "stable." The mother has failed to provide DCF with required documentation related to drug screens and her treatment protocol.
On this record, we are convinced that the determination of unfitness was supported by clear and convincing evidence. The judge made detailed and thorough findings, supported by the record, and considered a "constellation of factors" to conclude that the mother was unfit and that termination was in the child's best interests. Adoption of Greta, 431 Mass. 577, 588 (2000). The mother's prior drug abuse and unstable sobriety, combined with her inability to take responsibility for her situation and meet the child's needs, makes her unlikely to provide "minimally acceptable care" in the future. Adoption of Elena, 446 Mass. 24, 31 (2006), quoting from G. L. c. 210, § 3(c )(xii). See Adoption of Katharine, 42 Mass. App. Ct. 25, 32 (1997) ("[J]udges sitting on these sorts of custodial questions need [not] wait for inevitable disaster to happen").[11]
Decree affirmed.

The father's rights were also terminated; he is not a party to this appeal.

In the first proceeding, the mother was the subject child in a Child Requiring Assistance/Child in Need of Services petition. In the second proceeding, the mother's parental rights to her first child were terminated. That child is not involved here.

The mother relies on Commonwealth v. Coyne, 372 Mass. 599 (1977), to claim that a judge's failure to apply the two-prong "Lena test," see Lena v. Commonwealth, 369 Mass. 571, 575 (1976), is structural error. This is incorrect. In Coyne, supra at 602, the court acknowledged circumstances in which recusal is required by statute or may be the best practice. See Corey v. Commonwealth, 364 Mass. 137, 141 n.7 (1973) ; Commonwealth v. Brown, 364 Mass. 471, 480 n.20 (1973). Those circumstances are not present here. Rather, the court noted that "disqualification [is left] to the discretion of the judge." Coyne, supra at 602, citing Commonwealth v. Leventhal, 364 Mass. 718, 722 (1974). The Coyne court did not analyze the recusal issue as a structural error. Coyne, supra at 601-602.

We note, however, that the mother's failing to move for recusal prior to the trial and then raising claims of bias in this appeal, is questionable. See Demoulas v. Demoulas Super Mkts., Inc., 428 Mass. 543, 550 (1998) ("The timing of this motion [to recuse] makes it inherently suspect. The defendants have failed to demonstrate that the filing of this motion was not a last-minute attempt to nullify an adverse judgment").

The mother challenges this finding on the basis that five of the six charges were dismissed, one "had yet to have a disposition or trial," and four occurred prior to the child's birth. This argument goes to the weight of the evidence, rather than its support in the record, and for this, we defer to the judge. See Adoption of Ilian, 91 Mass. App. Ct. 727, 730 (2017).

For example, the child tested positive for morphine and was addicted to methadone at birth; she was hospitalized to receive treatment for her withdrawal symptoms. Furthermore, the mother was repeatedly observed asleep while holding and feeding the child in the hospital. Rather than driven by fatigue, the mother's falling asleep and slumping over on top of the child was due to her high morphine dosage postpartum. Doctors and nurses continually educated the mother about the safety issue this posed to the child, reminding her that "suffocation risk is a real possibility, especially as the mother is methadone medicated which seems to be making her sleep more deep[ly]," but the mother's denial and continued missteps drew concern from doctors and nurses about her ability to care for the child.

The mother disputes the judge's finding that the child lived with the mother for one month while the mother was in treatment at Angel House and spent "a handful of overnight visits" with the mother. The record does not support this finding, and indicates that the child lived with the mother for at least three months. However, this does not constitute reversible error because the ultimate determination of unfitness is supported by other clear and convincing evidence and this finding is "not central to the ultimate conclusion of unfitness. Even without [this] finding[ ], that conclusion has clear and convincing evidentiary support." Care & Protection of Olga, 57 Mass. App. Ct. 821, 825 (2003).

The record reflects that the mother missed one dose on August 3, 2014, because "she sprained her ankle and was in too much pain to come in." On October 15, 2015, the mother also reported to a DCF social worker that she missed her dose one time, but could not remember when that had occurred.

With respect to the mother's challenge to "stale evidence," although "isolated problems in the past or stale information cannot be a basis for a determination of current parental unfitness," Adoption of Rhona, 57 Mass. App. Ct. 479, 487 (2003) (quotations omitted), a judge may "consider past conduct to predict future ability and performance." Adoption of Katharine, supra at 33. The judge's consideration of the mother's drug use prior to the child's birth and a G. L. c. 119, § 51A, report (51A report) filed in 2005 on behalf of the mother was not improper. The judge was permitted to weigh this evidence of the mother's prior misconduct and past exposure to violence within her family in determining current parental fitness. See Adoption of Diane, 400 Mass. 196, 204 (1987) ; Adoption of Gillian, 63 Mass. App. Ct. 398, 404 n.6 (2005). Of particular note, the judge referenced the 51A report only in his discussion of the mother's background, and it was not figured into the ultimate determination of unfitness.