NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-623

CARE AND PROTECTION OF RAINIE.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On February 6, 2025, a Juvenile Court judgment entered based on findings that the mother was unfit to parent Rainie and Rainie was in need of care and protection.[2]  The mother and Rainie appealed, contending that the judge erred in finding that the mother was currently unfit to parent Rainie.[3]  We affirm.

_____

[1] A pseudonym.

[2] The judge also found the father unfit to parent Rainie. The father has not appealed or participated in this appeal.

[3] Rainie joins in the mother's arguments on appeal.  The mother did not argue in the trial court that the Department of Children and Families (department) failed to make reasonable efforts to prevent the need to remove Rainie from the home. Accordingly, her argument on appeal that the department did not make reasonable efforts to prevent the need for removal is waived.  See Adoption of Mattis, 106 Mass. App. Ct. 548, 549 (2026) ("We see no reason why a reasonable efforts claim should not be subject to the same waiver rules that apply to all appeals").  Even if preserved, the argument would be unavailing, because "[t]he department's obligation to make reasonable efforts to reunify the child with the mother is contingent upon

Background.  Rainie first entered the care of the Department of Children and Families (department) in October 2021, when she was twelve years old.[4]  At the time, Rainie was living with her maternal grandmother while the mother was living in Nigeria.[5]  After an incident resulting in the maternal grandmother calling 911 and Rainie being transported to a hospital emergency room, the maternal grandmother refused to care for Rainie.  Because the mother would not return from Nigeria at that time, Rainie entered the department's custody. Rainie was returned to the mother's care in January 2022, but remained in the department's custody until November 17, 2022.

After Rainie returned to the mother's custody on November 17, 2022, the mother began preparing to move back to Nigeria with Rainie, including unenrolling Rainie from her "K-8" school. On February 13, 2023, when Rainie was thirteen years old, the mother brought Rainie to the airport for their flight to

_____

her obligation to substantially fulfill her parental responsibilities."  Adoption of Yalena, 100 Mass. App. Ct. 542, 554 (2021).

[4] Rainie is the youngest of the mother's four children.  Her two minor children, Rainie and another, were both in the department's care at the time of trial.  The other child in the department's care is not the subject of this petition.

[5] The mother married her current husband, who lives in Nigeria, in 2021.  She began planning to move to Nigeria with Rainie in May 2022, and Rainie met the mother's current husband in the summer of 2022.

2

Nigeria.  Upon arrival at the airport, Rainie told the mother that she had decided she would not relocate to Nigeria.  And in response to the mother's question about what Rainie was going to do, Rainie responded that she would "figure it out" and left the airport.  The mother considered not boarding the flight but then decided against it and boarded the flight without Rainie and without arranging for Rainie's care.  The mother lived in Nigeria from February 13, 2023, until August 10, 2024, though she visited the United States two times in that period.

Two days after the mother left the country for Nigeria, the father notified the department that the mother had left the United States, that school staff had told Rainie she could not attend school because of her unenrollment, and that Rainie had left school with her older sister but their location was unknown.  The department filed a petition for care and protection on February 17, 2023, and the department was awarded emergency temporary custody of Rainie.  While the mother was abroad, Rainie generally refused to allow the department to place her in foster care, instead sometimes living at the father's home,[6] her sister's home, and a friend's home.  Indeed,

_____

[6] The father was arrested on March 6, 2023, while Rainie was living in his home.  Rainie continued to live in the father's home unsupervised while the father was in jail, until the end of March 2023.

3

Rainie often went missing throughout this period.  On one occasion in March of 2023, Rainie came in for transport to a department-approved placement in a foster home, but left after one day because she was bitten by bedbugs while staying at the foster home.[7]  A missing person report for Rainie was filed on November 20, 2023, but the report was cleared on November 29, 2023, after Rainie was found at the father's home.  Rainie contacted the department seeking a foster placement again on July 26, 2024, but ran away the day after she was placed.

After leaving the United States on February 13, 2023, the mother first communicated with the department almost three months later, by e-mail message on May 9, 2023.  She remained in sporadic communication with the department thereafter and refused to inform the department of her exact address, instead simply informing the department that she was in Nigeria.  The department created an action plan for the mother on November 21, 2023,[8] but the mother did not engage with the action plan until

_____

[7] The department acknowledges that the foster home had bedbugs.

[8] The department's action plan for the mother included the following tasks:  (1) monthly meetings with the department; (2) notifying the department if her address and contact information changed; (3) engaging in therapeutic services, including family and individual therapy; (4) learning and using health coping mechanisms; (5) identifying appropriate means of discipline that did not constitute actual or potential physical abuse; (6) being present for meetings pertaining to Rainie's

4

September 2024, after the mother returned from Nigeria. Although the mother returned to the United States twice while she lived in Nigeria, she did not meet with the department nor notify the department that she was in the United States.

After the mother relocated to the United States, she and Rainie began living with the maternal grandmother.[9]  Since then, the mother communicated with the department about her location, allowed home visits, and complied with a number of her action plan items.  The mother testified that she was willing to engage with department services but did not want to engage in individual therapy.  After an October 1, 2024 trial on the merits, the judge found on October 2, 2024, that Rainie was in need of care and protection and the mother was unfit to further the welfare and best interests of Rainie.  The judge granted

---

case; (7) engaging in supervised visits once the department determined visits were appropriate; (8) providing Rainie with a safe, stable, nurturing home environment; (9) ensuring Rainie received routine and emergency medical and dental care; (10) providing medical encounter forms to the department; (11) providing transportation when necessary; and (12) attending foster care reviews.

[9] The judge did not credit the mother's claim that she and Rainie would be welcome living with the maternal grandmother for as long as they needed, based on the fact that the maternal grandmother had previously refused to allow Rainie to stay with her in October 2021.

permanent custody of Rainie to the department. This appeal followed.

Discussion. In a proceeding to commit a child to the custody of the department under G. L. c. 119, § 26, "the department bears the burden of proving, by clear and convincing evidence, that a parent is currently unfit to further the best interests of a child and, therefore, the child is in need of care and protection." Care & Protection of Erin, 443 Mass. 567, 570 (2005). "Unless shown to be clearly erroneous, we do not disturb the judge's findings, which are entitled to substantial deference." Adoption of Jacques, 82 Mass. App. Ct. 601, 606-607 (2012). A judge may "rely upon prior patterns of ongoing, repeated, serious parental neglect, abuse, and misconduct in determining current unfitness." Adoption of Diane, 400 Mass. 196, 204 (1987).

Here, the mother challenges the judge's finding that the mother was unfit to parent Rainie on the grounds that (1) the judge disregarded evidence showing the mother's current fitness, and (2) the department struggled to find a stable placement for Rainie. Neither contention is availing.

To begin, the judge did not disregard evidence of the mother's current fitness. The judge noted the mother's then-current circumstances and credited the mother's testimony that

she had complied with a number of her action plan items following her return to the United States.[10]  He found that the maternal grandmother's home was clean and furnished, and that the mother had been driving Rainie to and from school daily. However, because the grandmother had previously refused to care for Rainie, the judge did not credit the mother's testimony that the maternal grandmother would allow the mother and Rainie to live in the maternal grandmother's home indefinitely. Significantly, at the time of the trial, the mother had only been in the United States and providing care for Rainie for less than two months.

Additionally, the judge appropriately weighed the mother's brief recent period of parenting against the mother's repeated pattern of abandoning Rainie, the most recent abandonment being for one and one-half years.[11]  Adoption of Diane, 400 Mass. at 204.  See G. L. c. 210, § 3 (c) ("abandoned" defined as "being

---

[10] However, the mother also stated at trial that she refused to engage in individual therapy, one of her action plan items.

[11] The fact that Rainie intermittently stayed at the father's home does not mitigate the mother's abandonment.  In fact, the mother acknowledged that Rainie's safety in the father's care was "questionable" and noted there were "a lot of safety concerns with him and being irresponsible."  The mother and the father had a history of domestic violence, and, at the time of the trial, the mother had no relationship with the father and was not willing to coparent with him.

left without any provision for support and without any person responsible to maintain care, custody and control because the whereabouts of the person responsible therefor is unknown and reasonable efforts to locate the person have been unsuccessful").  The mother's one and one-half year abandonment of Rainie on its own may have been sufficient ground for the judge to find the mother unfit.[12]  However, it is noteworthy that the period from February 2023 to August 2024 was not the first period in which the mother knew that Rainie had been left without a person responsible to maintain care of Rainie and still chose to remain in a different country.  See Adoption of Diane, supra.  Rainie was placed in the department's custody once before, beginning in October 2021, because the mother declined to return from abroad after Rainie's maternal grandmother refused to continue to provide care for Rainie.  See Adoption of Greta, 431 Mass. 577, 586 (2000) ("the mother's . . . inability to understand and prioritize her daughter's

_____

[12] Indeed, child abandonment may carry criminal penalties. G. L. c. 273, § 1 (1) ("A spouse or parent shall be guilty of a felony . . . if:  (1) he abandons his spouse or minor child without making reasonable provisions for the support of his spouse or minor child or both of them").  See Commonwealth v. Ricardi, 99 Mass. App. Ct. 496, 499 (2021) ("criminal child abandonment means the child was left without making reasonable provisions for support" [citation omitted]).

emotional needs, factor[s] prominently in the judge's rationale for the decree").

The mother's pattern of abandonment was also not limited to her relationship with Rainie.  The mother had filed two "Child Requiring Assistance" cases,[13] for two other children, in the summer of 2021.  Both of those children were placed in a youth home through the department and went missing shortly thereafter. When both children were arrested in July 2021, the mother refused to pick them up, and both children were placed in the department's temporary custody.

The mother's argument that the department's own difficulty in finding a stable placement for Rainie supported a finding that the mother was fit is also misplaced.  See Care & Protection of Erin, 443 Mass. at 570 ("In a proceeding to commit a child to the custody of the department . . . the department bears the burden of proving, by clear and convincing evidence, that a parent is currently unfit to further the best interests of a child").  The mother was aware that Rainie lacked a stable

---

[13] "A parent, legal guardian, or custodian of a child having custody of such child, may initiate an application for assistance . . . stating that said child repeatedly runs away from the home of said parent or guardian or repeatedly refuses to obey the lawful and reasonable commands of said parent or guardian resulting in said parent's or guardian's inability to adequately care for and protect said child."  G. L. c. 119, § 39E.

9

caregiver and nevertheless chose not to return to the country to care for Rainie for a period of one and one-half years.  The mother's choice to willfully abandon Rainie despite knowing that Rainie lacked a stable caregiver supports the judge's ultimate conclusion that the mother was unfit to assume parental responsibilities for Rainie.  See G. L. c. 210, § 3 (c).

Judgment affirmed.

By the Court (Desmond, Shin & Walsh, JJ.[14]),

Clerk

Entered:  April 3, 2026.

---

[14] The panelists are listed in order of seniority.

10