## ADOPTION OF CARLA.

Hampshire. September 8, 1993. - December 9, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Minor*, Adoption. *Adoption*, Dispensing with parent's consent. *Parent and Child*, Dispensing with parent's consent to adoption. *Evidence*, Child custody proceeding, Hearsay, State of mind, Privileged communication. *Due Process of Law*, Adoption. *Psychotherapist*.

In a proceeding under G. L. c. 210, § 3, to dispense with parental consent to the adoption of a child, no prejudicial error arose from the judge's admission of certain investigative reports prepared by a court investigator for the underlying care and protection proceedings, where the few findings of the trial judge that reflected information contained in the reports, along with all his other findings, were supported by live testimony of witnesses subject to cross-examination, including the investigator, and by other evidence properly admitted, and where the judge did not specifically rely on the reports in making his findings, which were supported by ample evidence even if the investigator's reports had been excluded. [512-513]

In a proceeding under G. L. c. 210, § 3, to dispense with parental consent to the adoption of a child, any error by the judge in admitting and using the hearsay statements of the child and of her brother was harmless, where the findings of the judge that reflected the children's statements were all supported by other evidence or testimony properly admitted. [513-514]

In a proceeding under G. L. c. 210, § 3, to dispense with parental consent to the adoption of a child, the child's mother's failure to make any attempt at trial to exercise the statutory privilege set forth in G. L. c. 233, § 20B, with respect to communications with a psychotherapist, precluded the mother from arguing on appeal that the trial judge erred in allowing a psychologist who had evaluated her to testify; nor, in the circumstances, could it be said that the mother was prejudiced by the admission of the psychologist's written evaluation; furthermore, the judge acted within his broad discretion in admitting testimony concerning the evaluation, which had occurred at some time in the past. [514-517]

In a proceeding under G. L. c. 210, § 3, to dispense with parental consent to the adoption of a child, clear and convincing evidence supported the

judge's finding that the child's mother was presently unfit to provide for
the welfare and best interests of the child. [517-520]

PETITION filed in the Hampshire Division of the Probate
and Family Court Department on November 20, 1989.

The case was heard by *Sean M. Dunphy*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Donald P. Whitney* for the mother.

*Richard A. Salcedo* for Department of Social Services.

LIACOS, C.J. Sally,[1] the mother, appeals from a judgment
of the Probate and Family Court allowing the petition of the
Department of Social Services (department) to dispense with
consent of the mother and the father to the adoption of their
child, Carla.[2] G. L. c. 210, § 3 (1992 ed.). The mother ar-
gues on appeal that the judge (1) erroneously admitted in
evidence three reports of an investigator prepared pursuant
to G. L. c. 119, § 24 (1992 ed.); (2) erroneously admitted
hearsay statements of the child and of her brother; (3) erro-
neously admitted the testimony and evaluation of a psycho-
therapist who evaluated the mother; and (4) granted the pe-
tition despite the lack of sufficient evidence.

The facts found by the judge are these. Carla was born in
1980, the child of Sally and Jay, who were married in 1973
and divorced in 1979. After the divorce of her parents, Carla
lived with her mother and brother, Jeremy. The family, con-
sisting of Sally, Carla, and Jeremy, came to the attention of
the department in October, 1986, as a result of a substanti-
ated report filed in accordance with G. L. c. 119, § 51A
(1992 ed.) (51A report). A second 51A report was filed in
December, 1986, and a third was filed in February, 1987.
The department filed a care and protection petition under
G. L. c. 119, § 24, in the Northampton Division of the Dis-

---

[1]According to our practice, the parties are referred to by pseudonyms.

[2]The father, Jay, did not appear or object. The judge appointed an attor-
ney to represent Jay, but the attorney was allowed to withdraw after he
was unable to maintain contact with Jay.

trict Court. Temporary custody was awarded to the department. An investigator was appointed by the District Court judge pursuant to G. L. c. 119, § 24. The investigator prepared a report as prescribed by the statute. In May, 1988, the judge of the District Court issued his findings, adjudication, and order in which he determined that Carla was in need of care and protection, and ordered her committed to the custody of the department. The department filed this petition to dispense with consent to adoption in November, 1989. Trial was held in the Probate and Family Court in February, 1992. During this trial Sally made numerous objections to the admission of certain evidence and testimony. We address each assertion of error individually.

1. *The investigator's reports.* Sally argues that the trial judge erred in admitting in evidence reports prepared pursuant to G. L. c. 119, § 24, by an investigator for the District Court in the underlying care and protection proceeding. Sally concedes that the report properly was admitted in the care and protection proceeding under the statutory exception to the hearsay rule. See *Custody of Jennifer*, 25 Mass. App. Ct. 241, 245 (1988), and cases cited. In those proceedings, investigators' reports are admissible even when they contain hearsay. *Custody of Tracy*, 31 Mass. App. Ct. 481, 486-487 (1991). *Custody of Michel*, 28 Mass. App. Ct. 260, 266 (1990).

The admissibility of an investigator's report prepared pursuant to G. L. c. 119, § 24, in a G. L. c. 210, § 3, proceeding on a petition to dispense with consent to adoption previously has been raised in this court but we have not yet been presented with an appropriate case to decide this issue. *Adoption of Mary*, 414 Mass. 705, 709-710 (1993). *Adoption of Kimberly*, 414 Mass. 526, 538-539 (1993). Similarly, we find it unnecessary to decide that issue today. Beyond her assertion that she was prejudiced by the admission of the investigator's reports, Sally makes no attempt to demonstrate specifically how she was prejudiced by the admission of the reports except to point out that the judge's findings reflected information in the reports although she does not point to spe-

cific findings to which she objects. Our own review of the record before us reveals no prejudice. Only a few of the findings of the trial judge reflected information contained in the reports. Those findings, however, along with all the other findings of the trial judge, were supported by live testimony of witnesses subject to cross-examination, including the investigator, and by other evidence properly admitted. The judge did not specifically rely on these reports in making his findings, and there was ample evidence to support them even if the investigator's reports had been excluded. Thus, any error in admitting the investigator's reports could not prejudice the mother. See *Adoption of Kimberly, supra* at 539.

2. *Hearsay statements of the children.* Sally claims that the trial judge erroneously failed to exclude hearsay statements of Jeremy in their entirety and hearsay statements of Carla to the extent they are not relevant to establish her state of mind. She concedes, however, that a child's state of mind may be relevant in a G. L. c. 210, § 3, proceeding.

Sally argues that, although Carla's state of mind may be relevant, since the proceeding deals with Sally's parental rights as to Carla, Jeremy's state of mind is not relevant because Sally's parental rights as to him are not at issue. Relevance is a broad concept, however, and any information which tends to establish or at least shed light on an issue is relevant. *Green* v. *Richmond,* 369 Mass. 47, 59 (1975). *Commonwealth* v. *Palladino,* 346 Mass. 720, 726 (1964). At issue here is whether Sally is currently unfit to further the welfare and best interests of Carla. *Adoption of Kimberly, supra* at 528-529. We have noted that "[a] parent may be fit to raise one child and unfit to raise another," *id.* at 530 n.8, and cases cited, but it is also true that a parent may be unfit to raise any child. Sally's fitness to raise Jeremy was not a question that the trial judge had to decide in this case, but that question was relevant to Sally's fitness to raise Carla. Therefore, Jeremy's state of mind may have been relevant and it was not error for the trial judge to consider it.

We recognize that it would have been error to admit the statements of the children for the purpose of establishing the

truth of the matters asserted therein. See *Custody of Michel*, 28 Mass. App. Ct. 260, 267 (1990). In the context of G. L. c. 119, § 24, hearsay contained in an investigator's reports is allowable where there is "an opportunity to refute the investigator *and the investigator's sources* through cross-examination and other means" (emphasis added). *Id.* at 266, and cases cited. Similarly, in c. 210 proceedings, due process and fundamental fairness dictate that a parent should have the opportunity to rebut the evidence against the parent. *Adoption of Mary*, 414 Mass. 705, 710 (1993). To permit the admission of a child's hearsay statements for their truth would violate this requirement where the parent is denied the opportunity to rebut effectively those statements. Such is the case when the child does not testify and the trial judge has no other means by which to assess the credibility and accuracy of the child's statements.[3]

Based on the record before us, we cannot determine whether the judge used the statements of the children for something other than a nonhearsay purpose. We note that at several points during the hearing, he indicated that he would accept the statements only to the extent they established the children's state of mind, and in other instances sustained Sally's hearsay objection to questions regarding the children's statements. Since the findings of the judge which reflected the hearsay statements of the children were all supported by other evidence or testimony which was properly admitted, we conclude that any error in admitting and using the statements of the children for hearsay purposes was harmless.

3. *The psychotherapist's testimony and evaluation.* Sally argues that the trial judge erroneously permitted a psychologist who evaluated Sally in March, 1987, to testify at the

---

[3]General Laws c. 233, §§ 82, 83 (1992 ed.), permit the admission of statements of children regarding sexual abuse when the trial judge makes certain required findings. Although some of the statements by the children in this case relate to sexual abuse, these sections are not applicable to this appeal because the judge did not make the required finding, for example, that Carla and Jeremy were unavailable to testify. See G. L. c. 233, § 82.

hearing despite the assertion by Sally of the psychotherapist-patient privilege, G. L. c. 233, § 20B (1992 ed.). Sally had filed a motion in limine to prohibit the testimony of the psychologist on the ground of the statutory privilege, and the trial judge denied this motion. At the trial, however, when the psychologist took the stand to testify, Sally's counsel made no objection to his testimony.[4] Since the existence of the privilege alone does not disqualify a psychotherapist from testifying, a party desiring to exercise the privilege must make an attempt to do so at trial. See *Commonwealth* v. *Benoit*, 410 Mass. 506, 518-519 (1991), and cases cited. Sally's failure to make such an attempt prevents her from arguing on appeal that the trial judge's allowing the psychologist to testify was error. *Id.* The assertion of the privilege in her motion in limine is insufficient to preserve Sally's appellate rights as to the psychologist's testimony. *Adoption of Kimberly*, 414 Mass. 526, 534-535 (1993); *Freyermuth* v. *Lutfy*, 376 Mass. 612, 616 (1978). Thus, the testimony of the psychologist retained its full probative force. *Freyermuth*, *supra* at 617.

Sally further argues, again on the ground of the psychotherapist-patient privilege, that it was error for the judge to admit the evaluation of Sally written by the psychologist. We find it unnecessary to address this argument, however, because even if it were error to admit the evaluation, any such error was harmless.[5] While the judge, in his findings of fact,

---

[4]In addition to seeking to prevent the testimony of the psychologist, Sally's motion in limine sought to exclude from evidence the psychologist's written evaluation of Sally and the investigator's three reports prepared for an earlier care and protection hearing pursuant to G. L. c. 119, § 24. The judge denied the motion as to the evaluation and the reports. Certain portions of the investigator's reports, however, were redacted, either by order of the trial judge or by agreement of the parties. At trial, Sally's counsel renewed her objection to the admission of the investigator's reports and the evaluation by the psychologist when they were offered by the department.

[5]The department contends that Sally waived her psychotherapist-patient privilege and refers us to the evaluation of the psychologist, where he wrote:

"After a cooperative assessment session, I asked her to sign a release of information form allowing me to share the results of the evalua-

quoted language contained in the evaluation, the quoted portions also were contained in the findings of fact of the District Court judge in the underlying care and protection proceeding. Those findings were admitted without objection. Therefore, the quoted portions of the psychologist's evaluation properly would have been before the court even if the evaluation itself had not been received in evidence.[6] Furthermore, the psychologist testified and was subject to cross-examination regarding his examination of Sally and regarding his opinion of Sally based on his examination and on hypotheticals presented to him. Much of his testimony reflected information contained in his written evaluation. Thus, we cannot say that Sally was prejudiced by the admission of the psychologist's written evaluation.

Sally urges that, even if the psychologist's testimony and written evaluation properly were before the court, it was error for the judge to accord them any weight in reaching his conclusion that Sally was currently unfit to be a parent to Carla because the information therein was stale. We have previously noted that "[a] judge has broad discretion in determining the admissibility of testimony concerning an evaluation which occurred at some time in the past. See *DeJesus* v. *Yogel*, 404 Mass. 44, 47 (1989). The period of time between [the examination] . . . and the testimony of a witness

tion with all interested parties. She declined to do so, on her attorney's advice, and I informed her (and subsequently her attorneys) that I would not score the tests nor arrive at conclusions nor write a report without such a release, since I am not a 'hired gun' in adversarial actions but work only in the interests of the children involved. She recently did come in and signed a consent form."

For the purposes of this case, we need not decide whether there was a waiver of the privilege. We express doubt, however, whether Sally's consent to sharing "the results of the evaluation with all interested parties," given after the psychologist presented her with an ultimatum, rises to the level of waiver. See *Commonwealth* v. *Berrio*, 407 Mass. 37, 43 (1990).

[6]The findings of the District Court judge in the underlying care and protection proceeding were not binding on the judge below, but the judge was not precluded from considering them to the extent they were relevant and material. *Adoption of Frederick*, 405 Mass. 1, 12 (1989). Sally did not object to the admission of those findings.

is a factor which the trier of fact may weigh in assessing the credibility of the testimony." *Commonwealth* v. *Rosenberg*, 410 Mass. 347, 355 (1991). Sally's argument seems to assume that the judge based his finding of current unfitness solely on the evaluation and testimony of the psychologist. The judge, however, heard from ten witnesses and received twenty-five exhibits in evidence. Moreover, the department posed hypotheticals to the psychologist which reflected events and circumstances in Sally's life that occurred after the psychologist's examination in 1987, and the psychologist then testified that those events and circumstances were consistent with his earlier diagnosis of Sally. While we agree that a finding of current unfitness cannot be based on stale information, see *Adoption of George*, 27 Mass. App. Ct. 265, 268 (1989), we note that prior history does have prognostic value. *Petition of Catholic Charitable Bureau of the Archdiocese of Boston, Inc., to Dispense with Consent to Adoption*, 395 Mass. 180, 185 (1985).[7]

4. *Insufficiency of the evidence.* Sally's final argument is that the judge's conclusion was not supported by sufficient evidence. In a G. L. c. 210, § 3, proceeding, a judge must find by clear and convincing evidence that a parent is presently unfit to provide for the welfare and best interests of the child in order to grant the petition. *Adoption of Mary, supra* at 710. The judge's findings will not be disturbed unless clearly erroneous. *Id. Adoption of Kimberly, supra* at 529.

---

[7]Sally argues that, "for stale evidence to at least have prognostic value it must indicate a pattern of ongoing, repeated, serious parental neglect, abuse and misconduct, *Adoption of Diane*, 400 Mass. 196 [, 204] (1987)," and that the evidence of the psychologist did not show such a pattern. Sally misreads *Adoption of Diane, supra.* In that case, we did not say that stale evidence must meet some minimum requirement of establishing a pattern in order for it to have prognostic value, but, rather, that the trial judge "*could properly rely* upon prior patterns of ongoing, repeated, serious parental neglect, abuse, and misconduct in determining current unfitness" (emphasis added). *Id.* at 204. Taking into account the entire evidence before the judge, we cannot say that the judge erred in considering the psychologist's testimony as relevant to Sally's current fitness as Carla's mother.

After reviewing the evidence and testimony properly before the judge, we conclude that the judge's conclusions were supported by clear and convincing evidence and were not clearly erroneous. The probate judge had before him twenty-five exhibits and the testimony of ten witnesses. There were three reports prepared pursuant to G. L. c. 119, § 51A, relating to Jeremy, respectively for medical neglect (broken elbow, untreated), bruises on his arms and legs, and bruises on his face and ear. There were court records and testimony by Sally that Sally's present husband, Frank, had been indicted on seven counts of assault and battery and assault and battery by means of a dangerous weapon (belt, gun, knife, razor blade, and machete) on Jeremy, and that Sally had been indicted on two counts of assault and battery by means of a dangerous weapon (belt and razor blade) on Jeremy. The evidence showed that Frank pleaded guilty to three of these counts, and that the charges against Sally were continued. There was testimony by State Trooper Denise Fisher that, in executing a search warrant at Frank's house, she observed, among other things, a rifle, razor blades, and a machete. She testified that she observed bullet holes in various places throughout Frank's house, including a bathroom door and the floor nearby. She testified that, under a mattress, she found the poster of Mickey Mouse that had been described to her by Jeremy. She testified further that the poster had bullet holes in it, and that, when she held it to the bathroom door, she observed that the bullet holes in the poster and on the door matched.[8]

Carla's therapist gave testimony based on her observations of Carla during play sessions. She characterized Carla as a traumatized child whose play exhibited themes of violence between adults and children and of sexual abuse. She testified that Carla had been "damaged" by past experiences and reenacted those experiences in her play, but that Carla began

---

[8]Jeremy had alleged that Frank forced him to stand in front of this poster attached to the bathroom door while Frank fired bullets over his head and in front of his feet.

to stabilize when she moved to her present foster home. The therapist gave her opinion that Carla should not be moved from her current foster home, that it would be in Carla's best interest if she were released for adoption, and that contact with Sally was not really enhancing Carla's development in any way. The therapist testified that she believed there had occurred physical, emotional, and sexual abuse while Carla lived with Sally, and that it would be dangerous for Carla to be returned to that environment if conditions had not changed. A social worker who had supervised visits between Sally and Carla testified to her observations during those visits. She testified that the visits were anxiety provoking for Carla and brought up for her both pleasant and unpleasant memories of the past. The social worker testified that Carla did not want her to leave the room during the visits. She also testified that Sally was uncooperative in working with the department except in arranging visits. The social worker gave her opinion, based on her experience, that Carla should not be removed from her present foster home and should be released for adoption.

The judge also heard testimony from two other social workers, who also had worked with Sally and Carla. Their testimony was similar to that of the first social worker. There was evidence that Carla, while in foster homes, exhibited many emotional and behavioral problems and acted out sexually, including excessive masturbation. There was also evidence that Carla required and received diagnostic inpatient hospitalization at University of Massachusetts Medical Center for her psychological problems. Finally, there was evidence, including Sally's own testimony, that Sally denied all the abuse alleged to have been perpetrated both by her and by Frank. Sally testified that Jeremy was a liar and made up these allegations, and convinced Carla to make the same allegations. Sally testified that she remained in a relationship with Frank and later married him despite the allegations. Sally testified that she would find it difficult to choose between being with her children and being with Frank, if she had to make such a choice.

The foregoing evidence was in the nature of personal observation, opinion, and documentary evidence presented directly to the judge. Even if we had decided today that the investigator's reports, the children's statements, and the evaluation and testimony of the psychologist all should have been excluded, this evidence still would have been before the probate judge. This evidence clearly and convincingly supports the judge's conclusion of unfitness. The petition of the department was properly granted. See *Adoption of Kimberly*, 414 Mass. 526, 531 (1993).

*Judgment affirmed.*