Shannon L. MCLAUGHLIN, Plaintiff,

v.

MCDONALD'S CORP. d/b/a McDonald's Restaurant; Nelamir Corporation; and Gladen Corp., Trustee of Sturbridge Realty Trust d/b/a Sturbridge Host Hotel, Defendants.

No. CIV. A. 98–40240–NMG.

United States District Court, D. Massachusetts.

Sept. 25, 2001.

John A. Tennaro, Lawson & Weitzen, LLP, Evan T. Lawson, J. Mark Dickison, Lawson & Weitzen, Boston, MA, for Shannon L. McLaughlin.

Robert T. Treat, Melick & Porter, Boston, for McDonald's Corporation, Nelson Amirault and Nelamir Corporation.

David M. O'Connor, O'Connor & Jantzen, Boston, MA, for Gladen Corp.

## ORDER

SWARTWOOD, United States Magistrate Judge.

### Nature of the Proceeding

By Orders of Reference dated February 13, 2001, June 4, 2001 and August 29, 2001 the following motions have been referred to me for disposition:

1. Defendants' Joint Motion to Compel Release of Psychological, Psychiatric and Counseling Records (Docket No. 50);

2. Defendants' Motion to Extend Time to Obtain Psychiatric Records and Designate an Expert with Respect to Witness Lowell Roberts (Docket No. 49);

3. Defendant Gladen Corp.'s Motion To Strike Portions Of the Plaintiff's Opposition Papers (Docket No. 70);

4. Defendants McDonald's Corporation And Nelson Amirault's Motion To Strike (Docket No. 73); and

5. Andrea Rosenthal, M.D.'s Motion To Quash Deposition Subpoena (Docket No. 86).

### Nature of the Case

Shannon McLaughlin ("Plaintiff"), brought this suit against McDonald's Corp., Nelamir Corporation, and Gladen Corp. ("Defen-

dants")[1] for negligence following her abduction and rape by Lowell Roberts, a non-party to this proceeding, on properties owned by them.

*Defendants' Motion To Compel Release Of Lowell Roberts' Psychological Records; Dr. Rosenthal's Motion To Quash; and Defendant's Motion To Extend Time To Appoint Expert*

### Facts

1. Just before midnight on June 16, 1997, Plaintiff parked in the McDonald's parking lot to pick up her then fiancee, an employee of McDonald's, who was about to finish his shift. *Complaint*, at ¶ 7.2.

2. Plaintiff got out of her car to check a tire, and, just as she was about to get back in her car, a man later identified as Lowell Roberts, grabbed her from behind and abducted her from the McDonald's premises at knife point. *Complaint*, at ¶ 9.

3. Mr. Roberts took the Plaintiff to the adjacent property of the Sturbridge Host, where he repeatedly raped her. *Complaint*, at ¶ 11.

4. The Plaintiff alleges that the fact that McDonald's Parking lot and areas surrounding the Sturbridge Host Hotel were not well lit and/or regularly patrolled made the areas unsafe and were factors which contributed to her rape.

5. Mr. Roberts pled guilty to nine counts of aggravated rape, one count of assault and battery with a dangerous weapon, one count of kidnaping, and one count of threatening to commit murder. Mr. Roberts is presently serving a ten to twelve year sentence in state prison. *Complaint*, at ¶ 13.

6. Mr. Roberts was deposed on October 13, 2000, after his deposition had been postponed on a number of occasions by mutual consent of the parties. *See Generally Deposition Of Lowell Roberts, Taken October 13, 2000* attached as *Ex. A* to *Opp. Of Pl. To Mot. Of Defs For Additional Time* (Docket No. 55) ("*Pl's Excerpts of Roberts Depo.*").

7. Mr. Roberts testified that he did not know why he chose to assault the Plaintiff. *Id.*, p. 47. He also testified that he gave no thought to the potential danger of being caught. *Id.*, p. 52. Mr. Roberts testified that he had been arrested before "so it wasn't that big of a deal". *Portions of Lowell Roberts Deposition*, attached as *Ex. 8* to *Aff. of Amy J. Delisa And Attached Exhibits* (Docket No. 62) ("*Defs' Excerpts of Roberts Depo.*"), at p. 93. Mr. Roberts did not recall if any environmental factors played a part in his decision to assault the Plaintiff. *Id.*, at p. 96.

8. Mr. Roberts maintains that he was severely inebriated at the time of the assault. *Pl's Excerpts of Robert's Depo.*, at p. 40. Mr. Roberts recollects walking past the Plaintiff a first time, going back to his truck, and then going back for her. However, Mr. Roberts testified that he would be speculating if he said he remembered when the conscious thought of raping the Plaintiff came into his head. *Id.*, at pp. 46–47.

9. During his deposition, Mr. Roberts testified that since being incarcerated, he had been diagnosed with Obsessive Compulsive Disorder ("OCD") by his prison psychiatrist, Dr. Rosenthal, and his counselor, Ms. LaRouche. Mr. Roberts further testified that it is Dr. Rosenthal and Ms. LaRouche's belief that he was suffering from OCD at the time of the abduction and rape of the Plaintiff. *Defs' Excerpts of Roberts Depo.*, pgs. 65–67.

10. Mr. Roberts has notified the Defendants in writing that he will not voluntarily release his mental health records to them. *See* Letter From Amy J. DeLisa and attachment (Docket No. 85).

11. The Defendants have served Dr. Rosenthal with a subpoena requesting that she appear for a deposition and produce all of her records concerning her treatment and counseling of Mr. Roberts. In addition to serving a notice of deposition on Dr. Rosenthal, the Defendants have apparently attempted to serve a deposition notice on Ms. LaRouche. However, Ms. LaRouche is no

---

1. McDonald's Corp. owns the McDonald's Restaurant franchise, as well as the property upon which the McDonald's restaurant in question was built. Nelamir Corporation is the franchisee who owns and operates that McDonald's restaurant and leases the restaurant premises from McDonald's Corporation. Gladen Corp. is the owner of the Sturbridge Host Hotel.

longer employed at the prison and it appears that attempts to serve her have been unsuccessful.

12. The original scheduling order in this case required that parties appoint experts by September 1, 2000. (Docket No. 28). Since then, Judge Gorton endorsed two joint motions to extend the deadline for appointing experts, first to September 15, 2000, and then to November 15, 2000. (Docket Nos. 38, 42).

### Discussion

As a result of Mr. Roberts' testimony at his deposition, the Defendants now presume that Mr. Roberts was suffering from OCD at the time that he raped the Plaintiff. The Defendants argue that given the nature of this disorder, the fact that Mr. Roberts was suffering from OCD supports their contention that Mr. Roberts' assault and rape of the Plaintiff was not foreseeable and could not have been prevented by more extensive security measures and, consequently, they did not breach a duty of care to the Plaintiff.

If Defendants' motion to compel is granted, they want to designate an expert to review Mr. Roberts' records and render an opinion consistent with their theory. Therefore, Defendants also seek a modification to the Scheduling Order to extend the time for designating experts. Dr. Rosenthal has filed a motion seeking to quash Defendants' request that she produce Mr. Roberts' mental health records. Initially, I will address whether this Court can compel the production of Mr. Roberts' psychological and counseling records. At the same time, I will make a determination on Dr. Rosenthal's motion to quash. Then, if necessary, I will address the Defendants' motion to modify the scheduling order.

A. *Defendants' Motion to Compel Disclosure of Mr. Roberts' Psychological Records; Dr. Rosenthal's Motion To Quash*

■ This Court's rules of evidence provide that "the privilege of a witness, person … shall be governed by the principles of common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person … shall be determined in accordance with State law." Fed.R.Evid. 501. This is a diversity case as to which Massachusetts law applies. Therefore, Massachusetts law governs whether Mr. Roberts' mental health records must be produced over his objection.

Neither the Massachusetts courts nor the First Circuit has addressed the issue of whether under Massachusetts law a party to a civil proceeding can compel the disclosure of statutorily privileged psychological records of a non-party. However, this issue was addressed by the Third Circuit in *Hahnemann University Hospital v. Edgar*, 74 F.3d 456 (3d Cir.1996). In *Hahnemann*, as part of their negligence suit against the hospital, the conservators of the estate of a female patient who was assaulted at a mental health facility sought disclosure of certain psychological records of the two male patients who allegedly assaulted her. The Third Circuit determined that the Pennsylvania Mental Health Procedures Act ("MPHA") expressly forbid disclosure of a patient's psychological records unless one of the statutory exceptions applied. Furthermore, the Third Circuit found that Pennsylvania courts had construed the exceptions narrowly. In the circumstances of that case, the Third Circuit found that the plaintiffs' request for disclosure of the patients' records did not fall within any of the statutory exceptions. Therefore, the court denied the plaintiffs' request that the hospital be ordered to disclose the patients' psychological records.

■ In Massachusetts, a patient's psychological records are privileged pursuant to Mass.Gen.L. ch. 233, § 20B ("Patient Privilege Statute"). However, the privilege is not absolute and is waived unless asserted by the patient or his representative. *See Adoption of Carla*, 623 N.E.2d 1118, 416 Mass. 510 (1993); *see also Commonwealth v. Souther*, 575 N.E.2d 1150, 31 Mass.App.Ct. 219 (1991). The Patient Privilege Statute, which is simi-

lar to Pennsylvania's MPHA, states that except as provided in the listed exceptions [2],

> in any court proceeding and in any proceeding preliminary thereto..., a patient shall have the privilege of refusing to disclose, and of preventing a witness from disclosing, any communication, wherever made, between said patient and a psychotherapist relative to the diagnosis or treatment of the patient's mental or emotional condition.

Mass. Gen. L ch.233, § 20B.

In general, Massachusetts courts have refused to order disclosure of psychological records unless one of the statutory exceptions applies. *See Sabree v. United Broth. of Carpenters & Joiners of America, Local No. 33*, 126 F.R.D. 422 (D.Mass.1989) (where disclosure was denied because no exception to psychotherapist-patient privilege applied to permit discovery of records of worker's psychotherapist where worker did not place his mental condition at issue); *Petition of Catholic Charitable Bureau of Archdiocese of Boston, Inc.*, 392 Mass. 738, 467 N.E.2d 866· (1984) (Supreme Judicial Court not at liberty to substitute its judgment for that of the legislature by expanding on defined exception to psychotherapist-patient privilege); *Herridge v. Board of Registration in Medicine*, 420 Mass. 154, 648 N.E.2d 745 (1995) (motion compelling disclosure of privileged records denied, no exception applied); *JME, SME and LSE v. DRT, PPT and DHT*, 1996 WL 680081 (Mass.Super.1996) (motion compelling disclosure of privileged records denied, no exceptions applied).

Massachusetts courts have permitted disclosure of a witness's psychological records to defendants in criminal proceedings. The rationale behind this judicially created exception is based on due process fundamental fairness concerns which require that in criminal proceedings "in certain circumstances, a defendant must have access to privileged records so as not to undermine confidence in the outcome of the trial". *Commonwealth v. Bishop*, 416 Mass. 169, 176, 617 N.E.2d 990 (1993) (emphasis in original); *see also Commonwealth v. Stockhammer*, 409 Mass. 867, 881–883, 570 N.E.2d 992 (1991) (statutory privilege must yield to defendant's right to use privileged communications in his defense). Because these same federal and state constitutional guarantees of due process do not apply to civil proceedings, Massachusetts Courts have been reluctant to recognize such an exception to the privilege in civil proceedings. *See Herridge*, 420 Mass. at 157, 648 N.E.2d 745. For example, in *Herridge*, where a physician sought access to a patient's privileged treatment records in a hearing before the medical board to have his medical license reinstated, the Massachusetts Supreme Judicial Court held that in a civil action which is non-penal in nature, the constitution does not guarantee a party access to otherwise privileged records. Hence, the denial of access to a patient's psychiatric records does not violate the moving party's right to due process. *Id.* Consequently, in a civil proceeding, once the court determines that a patient's record falls within the Patient Privilege Statute, such record should not be disclosed unless the patient waives the privilege or one of the statutory exceptions applies. *See* Jackie Gardina, *The Nature and Extent of Privilege for Mental Health Professionals in Massachusetts*, Summer Mass.L.Rev. 5, 12 (1999); *JME, SME, and LSE v. DRT, PPT, and DHT*, 1996 WL 680081 (Mass.Super.1996).

■ This Court must now determine whether Mr. Roberts' records are privileged, and if so, whether any of the stated exceptions to the privilege compel disclosure of such records to the Defendants. I find that the records sought by the Defendants in their motion to compel are privileged.

---

2. The circumstances under which Section 20B permits disclosure of psychotherapist records are as follows: (a) if a psychotherapist determines there is a threat of imminently dangerous activity by the patient against himself or another person; (b) if the patient was informed before communicating with the psychotherapist that such communications would not be privileged; (c) in any proceeding in which the patient places his mental or emotional condition at issue; (d) if mental state of a deceased patient is placed at issue by any party representing the interests of the patient; (e) in the context of child custody or adoption, if the judge determines that the importance of the child's welfare outweighs protecting the privileged relationship; and (f) in any proceeding brought by the patient against the psychotherapist. Mass. Gen. L. ch. 233, § 20B.

Specifically, I find that Mr. Roberts is a "patient" as defined by the statute, Dr. Rosenthal and Ms. LaRouche are "psychotherapists" as defined by the statute, and Mr. Roberts' mental health records contain "communications" as defined by the statute [3]. I further find that Mr. Roberts has invoked the privilege and that none of the statutory exceptions to the privilege apply to this case. Therefore, the Defendants' motion to compel disclosure of Mr. Roberts' mental health records is denied and Dr. Rosenthal's motion to quash is allowed.

### B. Defendants' Motion for Modifying the Scheduling Order

 Defendants have filed a motion to extend the deadline for designating experts in order to allow them to appoint an expert to review Mr. Roberts' psychological records and to opine on whether at the time of the assault, Mr. Roberts was suffering from any mental disorder that played a factor in his raping the Plaintiff. Although Defendants have shown good cause for amending the scheduling order [4], because I have denied the Defendants' motion to compel disclosure of Mr. Roberts' mental health records, the need for appointing an expert for the purposes of reviewing those records is moot. Therefore, the motion is denied.

### C. Defendants' Motions To Strike

 Defendant's seek to strike certain facts relied on by the Plaintiff in her opposition to their motions for summary judgment on the grounds that such facts rely on evidence which constitutes inadmissible hearsay or is irrelevant, or that certain of Plaintiff's statements of fact distort the evidence. As to the police reports that the Defendants argue contain hearsay, I am denying their motion to strike. However, in ruling on the parties' motions for summary judgment, in making findings of fact, I will consider the reliability and admissibility of certain statements made in those reports. I am denying the Defendants' requests to strike certain

---

3. A "psychotherapist", for purposes of the Patient Privilege Statute, is:

a person licensed to practice medicine, who devotes a substantial portion of his time to the practice of psychiatry. "Psychotherapist" shall also include a person who is licensed as a psychologist by the board of registration of psychologists; a graduate of, or student enrolled in, a doctoral degree program in psychology at a recognized educational institution ... who is working under the supervision of a licensed psychologist; or a person who is a registered nurse licensed by the board of registration in nursing whose certificate of registration has been endorsed authorizing the practice of professional nursing in an expanded role as a psychiatric nurse mental health clinical specialist ...

A "patient", for purposes of the Patient Privilege Statute, "is a person who, during the course of diagnosis, communicates with the psychotherapist".

"Communications", for purposes of the Patient Privilege Statute, "includes conversations, correspondence, actions and occurrences relating to diagnosis or treatment before, during or after institutionalization, regardless of the patient's awareness of such conversations, correspondence, actions and occurrences, and any records, memoranda or notes of the foregoing".

Mass. Gen. L. ch 233, § 20B.

Dr. Rosenthal is a licensed psychiatrist who treats Mr. Roberts. Ms. LaRouche is described as someone who has counseled Mr. Roberts concerning his mental health problems. Clearly, Dr. Rosenthal is a "psychotherapist". It is not clear from the record whether Ms. LaRouche is a trained medical professional or a social worker. If Ms. LaRouche is a social worker rather than a licensed medical professional, the privilege preventing disclosure of Mr. Roberts' "communications" with Ms. LaRouche falls under Mass. Gen. L. ch. 112, § 135B and again, none of the statutory exceptions to that privilege apply. In any event, based on the record before me, I find that the records of Dr. Rosenthal and Ms. LaRouche requested by the Defendants are privileged communications.

4. The "good cause" test requires a showing that despite due diligence by the party seeking the extension, the deadline in the scheduling order could not reasonably be met. The scheduling order will not be amended to permit designating of an expert on an issue that did not arise unannounced and unforeseen prior to the deadline. *Cabana v. Forcier*, 200 F.R.D. 9, 14 (D.Mass. 2001). Defendants filed this motion prior to the expiration of the date for designating experts. Furthermore, no date has been set for trial. Defendants only learned of Mr. Roberts' OCD diagnosis and treatment on October 13, 2000, approximately a month before the November 15, 2000 deadline for designating experts. Therefore, I find Defendants have shown good cause to modify the scheduling order to extend the date for designating an expert. At the same time, since I have denied Defendants' motion to compel the disclosure of Mr. Roberts' mental health records, the motion to extend is moot.

statements on relevancy grounds. To the extent that Plaintiff relies on statements of fact of limited relevancy, such statements simply would not create a genuine issue of material fact. The Gladen Corp. argues that other statements should be stricken on the grounds that such statements misstate the evidence in the record. There is a fine line between a party's stating the facts in a light most favorable to him/her and misstating the evidence. In most of the instances in which Gladen Corp. challenges the Plaintiff's factual allegations, although the Plaintiff has approached that line, she has not crossed it. Therefore, I am denying the Gladen Corp.'s motion to strike such allegations, except that, I am striking Plaintiff's allegation that at the time of her attack, the Sturbridge Host was servicing 50,000–60,000 people per weekend. Clearly, in that instance, the Plaintiff has misstated the evidence which she cites as support for that allegation. Additionally, although I do not find that the Plaintiff misstated the deposition testimony of Mr. Klisiewicz, she did erroneously refer to him as the Sturbridge Host manager rather than the Director of Human Resources, and therefore, I will strike that reference. In all other respects, the motions to strike are denied.

### Conclusion

1. Defendants' Joint Motion to Compel Release of Psychological, Psychiatric and Counseling Records (Docket No. 50) is *denied;*

2. Defendants' Motion to Extend Time to Obtain Psychiatric Records and Designate an Expert with Respect to Witness Lowell Roberts (Docket No. 49) is *denied* as moot;

3. Defendant Gladen Corp.'s Motion To Strike Portions Of the Plaintiff's Opposition Papers is *allowed* in part and *denied* in part as provided in this Order (Docket No. 70);

4. Defendants McDonald's Corporation And Nelson Amirault's Motion To Strike is *denied* (Docket No. 73); and

5. Andrea Rosenthal, M.D.'s Motion To Quash Deposition Subpoena (Docket No. 86) is *allowed.*