NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-735

ADOPTION OF SUZANNE (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial that spanned thirty nonconsecutive days,[2] a judge of the Juvenile Court issued decrees terminating the mother and father's parental rights to two of their children, Suzanne and Amy, and ordering two posttermination and postadoption visits per year.[3]  The father appeals from the termination of his rights with respect to both children, arguing that (1) the trial judge failed to assess his parental fitness as it existed at the time of the trial, and (2) the trial judge improperly relied on the father's noncompliance with his action plan in finding him unfit and terminating his parental rights.[4]

---

[1] Adoption of Amy.  The children's names are pseudonyms.

[2] The trial, which occurred during the COVID-19 pandemic, was conducted via the Internet-based video platform Zoom.

[3] The mother and father also shared two younger sons; the mother and father stipulated as to their unfitness with respect to the boys during the trial.  The father also has an older son who reached the age of majority prior to trial and is thus no longer party to this appeal.

[4] The mother also appealed from the termination of her parental rights with respect to Suzanne and Amy but passed away during

Suzanne also appeals from (1) the termination of her father's parental rights as to her, arguing that the record lacks clear and convincing evidence that termination is currently in her best interest, and (2) the trial judge's order limiting posttermination and postadoption visitation to two visits per year, arguing that the order is not in her best interests. We address each of these arguments in turn and, discerning no error, affirm the decrees.

Discussion. 1. Termination of parental rights. The father first contends that the trial judge erred in terminating his parental rights because she failed to properly assess his parental fitness as it existed at the time the trial ended, as opposed to at the time the children were first removed from his care. We are not persuaded.

At the outset, "we note that prior history does have prognostic value." Adoption of Carla, 416 Mass. 510, 517 (1993). Although it is true that a finding of unfitness cannot be based on stale information, there was no error in the trial judge's consideration of the father's treatment of Suzanne and Amy at the time of removal as part of her overall assessment of the father's fitness so long as that treatment spoke to the father's current unfitness. See id. With this understanding,

_____

the pendency of this appeal. Amy initially appealed from the visitation order but withdrew that appeal at oral argument.

2

we turn to consider whether sufficient evidence was adduced at trial to permit the trial judge to find that the father was unfit and that his parental rights should be terminated, and conclude that there was.

"To terminate parental rights to a child and dispense with consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Bea, 97 Mass. App. Ct. 416, 421-422 (2020), quoting Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). "In determining whether the best interests of the children will be served by issuing a decree dispensing with the need for consent, a court shall consider the ability, capacity, fitness, and readiness of the child's parents . . ." (quotation and citation omitted). Adoption of Jacques, supra. "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion."[5]

---

[5] At times throughout his argument, the father asserts that some of the trial judge's factual findings are stale or erroneous. The father takes particular issue with the trial judge's findings regarding his participation in visits with the children and his engagement in family therapy. These assertions amount to an effort to reargue the evidence. We discern no factual

<u>Adoption of Patty</u>, 489 Mass. 630, 637 (2022), quoting <u>Adoption of Ilona</u>, 459 Mass. 53, 59 (2011).

Here, we conclude that there was ample evidence supporting the termination of the father's parental rights. Chiefly, reports issued pursuant to G. L. c. 119, § 51A (51A reports), in addition to testimony at trial, permitted the trial judge to conclude that both Suzanne and Amy had been sexually abused while in the parents' custody.[6] There was further evidence suggesting that the father's son, the girls' older half-brother, was the perpetrator of the abuse. The father was resistant to acknowledging the possibility that the older brother abused the girls, and as part of the action plan to regain custody of the children, the Department of Children and Families (DCF) required him, among other things, to "understand . . . who is appropriate to have around the kids . . . [and] safe adults to help assist with caretaking." He was further required to "explore his belief system around his daughters having been sexually abused by his son as well as his son's needs and risk and how he can

---

finding that is clearly erroneous or otherwise unsupported, and where evidence at trial conflicted, "the judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference" (citation omitted). <u>Adoption of Quentin</u>, 424 Mass. 882, 886 (1997).

[6] The 51A reports were admitted to "'set the stage' to explain how the department became involved with the family." <u>Adoption of Querida</u>, 94 Mass. App. Ct. 771, 778 (2019), quoting <u>Custody of Michel</u>, 28 Mass. App. Ct. 260, 267 (1990).

4

ensure safety for his children."[7]  These requirements were necessary to ensure that the father could protect Suzanne and Amy from further sexual abuse.  Testimony at trial reasonably supported the trial judge's findings that the father insufficiently progressed towards these goals and was therefore ill-equipped to protect the girls from further abuse.

The father's noncompliance with other portions of the action plan further supported termination of his parental rights.  At the time the children were removed from his custody, they displayed poor personal hygiene, including, in Amy's case, symptoms of untreated head lice.[8]  Furthermore, the father and mother did not bring their children, including the subject children here, to necessary medical appointments, nor did they

---

[7] The father argues that he was improperly required by DCF to acknowledge that his older son sexually abused Suzanne and Amy. Contrary to his assertion, he was not required to do so, but rather, merely required to consider the possibility and explore ways he could protect his daughters from the threat of sexual abuse.  The cases cited by the father in support of his position can be readily distinguished because, in each, DCF required the parent to acknowledge that a specific person abused their children.  See Adoption of Carlos, 413 Mass. 339, 346 (1992); Adoption of Yalena, 100 Mass. App. Ct. 542, 549-550 (2021). Here, the father was not required to acknowledge that his older son abused his daughters, but, rather, merely acknowledge the possibility of such abuse.

[8] The evidence was also enough to support a finding that the children's hygiene was so poor that one of Suzanne and Amy's younger siblings had an untreated diaper rash that was "blistering and oozing with a significant amount of clearish liquid and blood."  At one point, a caregiver observed feces on that child's right ear.

adequately communicate with care providers or supervise their children's medication and medical needs.[9]  These deficiencies placed the girls at risk of harm and supported the trial judge's finding that "[Suzanne] and [Amy] have been continuously placed at risk as a result of Mother and Father's grievous shortcomings."  The action plan tasks were intended to help the father improve his parental fitness.[10]  Instead of availing himself of the resources provided by DCF intended to help him address these issues, the father did not satisfactorily participate in therapy or home visits intended to help him improve his parenting skills.  These issues further supported the trial judge's conclusion that the father was unfit and that termination of parental rights was in the children's best interests.[11]  See Adoption of Varik, 95 Mass. App. Ct. 762, 773-

---

[9] There was a family history of seizures, and at least four missed medical appointments were intended to address these concerns regarding several of the children.

[10] The father argues that his noncompliance with his action plan should not support the termination of his parental rights because the issues his plan was meant to address were not sufficiently severe.  Where sexual abuse and medical neglect are implicated, however, we are not persuaded that the judge abused her discretion in considering the father's noncompliance as part of her analysis.  See Adoption of Jacques, 82 Mass. App. Ct. at 606.  See also Adoption of Quentin, 424 Mass. at 886.

[11] Suzanne argues that we should conclude that termination of the father's parental rights was not in her best interests, in part because, as a nine year old at the end of the trial, she is statistically unlikely to be adopted.  While we are sympathetic to the difficult realities faced by foster children with respect to adoptive placements, we decline to conclude that those difficulties here rise to the level necessary to overcome the

6

774 (2019) ("the judge was warranted in concluding that there were 'grievous shortcomings' in the father's efforts to parent . . . that would not be remedied in the foreseeable future, and that justified the termination of the father's parental rights").

2. Visitation. "A judge may decline to order postadoption visitation, or 'may order limited postadoption contact, including visitation, between a child and a biological parent where such contact is currently in the best interests of the child.'" Adoption of Saul, 60 Mass. App. Ct. 546, 556 (2004), quoting Adoption of Vito, 431 Mass. 550, 553 (2000). "An order for postadoption contact is grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent, not in the rights of the biological parent nor the legal consequences of their natural relation" (quotation omitted). Adoption of Saul, supra. "Appellate review of a judge's denial of a request for postadoption visitation is under the abuse of discretion standard." Id. at

father's severe deficiencies with respect to protecting Suzanne from further abuse and ensuring she receives such medical care as may be necessary. See Adoption of Bea, 97 Mass. App. Ct. at 421-422. See also Adoption of Varik, 95 Mass. App. Ct. 762, 773-774 (2019).

555, quoting <u>Adoption of Nicole</u>, 40 Mass. App. Ct. 259, 264 (1996).

Here, we discern no abuse of discretion in the trial judge's decision to grant two posttermination and postadoption visits per year.  The record contained evidence reflecting that, while Suzanne enjoyed the visits, they were often chaotic.  The father, while attending visits regularly, was often unengaged during the visits and made excessive use of his cell phone.  Although Suzanne argues that she enjoys the visits, a DCF social worker testified that the father's behavior often caused the children to become upset.  Given this evidence, we discern no abuse of discretion in the trial judge's assessment that two visits per year are in the best interests of the children.

<u>Decrees affirmed</u>.

By the Court (Green, C.J.,
  Desmond & Hand, JJ.[12]),

<em>Joseph F. Stanton</em>

Clerk

Entered:  October 26, 2023.

---

[12] The panelists are listed in order of seniority.