NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-663

ADOPTION OF TAHI (and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a review and redetermination trial that spanned eight nonconsecutive days between April and November of 2023, a judge of the Juvenile Court found the mother unfit to assume parental responsibility for her children, Tahi and Ava, terminated her parental rights, and approved the proposed adoption plan of the Department of Children and Families (department) to place the children with their foster mother.[2]  In her findings of facts and conclusions of law, the trial judge also found that an order of visitation between the children and the mother was not in the children's best interests.  The mother now appeals, arguing:  (1) the trial judge's decision rested on

_____

[1] Adoption of Ava.  The children's names are pseudonyms.

[2] On September 9, 2019, the mother had stipulated to and was found unfit to parent Tahi and Ava.  The department was then given "permanent" custody of the children.

an erroneous finding that the mother had an active substance abuse problem at the end of trial, and any evidence of the mother's substance abuse was stale and could not support a finding of future unfitness; (2) the trial judge abused her discretion in finding that termination of the mother's parental rights was in the children's best interests; and (3) the trial judge erred in refusing to order posttermination and postadoption visitation with Ava.  We affirm.

Discussion.  1.  Mother's fitness.  The mother argues that the trial judge failed to properly assess her parental fitness as it existed at the time of trial but instead relied on stale evidence relative to her previous substance abuse issues.  The argument is predicated on factual findings in the judge's decision indicating that the mother used drugs in the summer of 2022, as well as the judge's consideration of the mother's "ability to maintain a sober lifestyle" and the mother's "ongoing substance abuse," which were incorporated within the judge's ultimate unfitness determination.

We begin by first noting that in finding the mother unfit, the trial judge considered numerous factors, which the mother does not challenge, alongside the mother's substance abuse history, including the mother's housing instability, involvement in domestic violence relationships, and inability to consistently engage in treatment or to meaningfully engage with

2

the department.  As discussed infra, these factors alone were sufficient to support an unfitness determination.[3]  Therefore, even assuming without deciding that the judge mistakenly and thus erroneously concluded that the mother was using drugs as recently as the summer of 2022, or had an "ongoing" substance abuse issue,[4] any error was harmless where, as discussed below,

---

[3] The mother argues that the language in the judge's decision that "the paramount issue in this case is Mother's issues with substance abuse" indicates that the judge terminated the mother's rights primarily because of her substance abuse issues.  However, later in her decision the judge wrote "Mother's substance abuse and inconsistent treatment is of paramount concern and contributes to her parental unfitness" (emphasis supplied).  The judge also used the word "paramount" on two other occasions where she did not reference the mother's substance abuse issues.  Therefore, we do not read the judge's use of the word "paramount" to mean "sole" or "exclusive." Additionally, the mother's substance abuse was clearly of "paramount" concern in this case, as it was a primary cause of her children's removal.

[4] For example, the mother specifically takes issue with findings of fact, numbers 166 and 173, in the judge's decision. In finding number 166, the judge made an inference that "Mother was struggling with her substance abuse in the summer of 2022" because of her failure to provide certified drug screens in July and August of 2022, as well as her prior testimony that "the 'entire' reason she was not communicating with the Department during certain periods was because she was using drugs during those times."  However, the mother's life was considerably disrupted due to domestic violence in the summer of 2022, and the "periods" the mother was referring to in her previous testimony were from "the initiation of the case" over three years prior "and the few months that followed."  Therefore, the mother argues that the judge's inference was inaccurate and improper.

Finding number 173 concludes that the mother informed a victim advocate that she had been sober twelve months as of June

3

the "judge's conclusion that the mother was unfit was clearly and convincingly supported by the judge's [other] subsidiary findings." Adoption of Bea, 97 Mass. App. Ct. 416, 426 (2020).

Furthermore, although "a finding of current unfitness cannot be based on stale information . . . prior history does have prognostic value." Adoption of Carla, 416 Mass. 510, 517 (1993). Indeed, "[w]here a person's character is itself in issue, as a parent's character generally is in custody or adoption cases, courts have usually held that it may be proved by evidence of specific acts of misconduct bearing on character." Adoption of Irwin, 28 Mass. App. Ct. 41, 43 (1989). Accordingly, there was no error in the trial judge's consideration of the mother's entire history of substance abuse especially where the mother's substance abuse was a central issue in the initial removal of her children, and evidence was adduced at trial that the mother's substance abuse remained an ongoing concern, at least as of 2022. See Adoption of Anton, 72 Mass. App. Ct. 667, 676 (2008) (finding evidence of drug abuse relevant to parent's "willingness, competence, and availability to provide care"). Notably, the mother worked with a recovery support specialist during February and March of 2022 and

---

2023. However, the advocate's testimony was that the mother informed her that she had been twelve months sober in June of 2022.

4

discussed entering "long-term sober living," a recommendation that the judge found the mother did not "embrace." The mother also failed to provide the department with certified drug screens in July, August, and September of 2022, albeit during a time when she was moving and was the victim of domestic violence. To be sure, the mother has engaged in various substance abuse treatment programs since 2019. However, her treatment has been sporadic and inconsistent, and as of late June 2023, well into the trial, the mother was not engaged in any substance abuse treatment.

2. Termination of parental rights. The mother also asserts that the trial judge abused her discretion in finding that the termination of the mother's parental rights was in the children's best interests. In support of this argument, the mother avers that the trial judge gave undue weight to the children's preferences and improperly faulted the mother for opposing the children's wishes. The mother also contends that the evidence could not support a finding that she would fail to meet the children's needs should they be reunified, and that the trial judge ignored negative evidence regarding the proposed adoptive placement with the children's foster mother, thereby failing to make an even-handed assessment of the evidence. We disagree.

5

"To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Bea, 97 Mass. App. Ct. at 421-422, quoting Adoption of Jacques, 82 Mass. App. Ct. 601, 606 (2012). "In determining whether the best interests of the children will be served by issuing a decree dispensing with the need for consent, a court shall consider the ability, capacity, fitness and readiness of the child's parents . . ." (quotation and citation omitted). Adoption of Jacques, supra. "We give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion." Adoption of Patty, 489 Mass. 630, 637 (2022), quoting Adoption of Ilona, 459 Mass. 53, 59 (2011).

Here, ample evidence was adduced at trial to support a finding by clear and convincing evidence that termination is in the children's best interests. See Adoption of Bea, 97 Mass. App. Ct. at 421-422. In January 2019, the department removed the children from the mother's care due to the mother's

substance abuse,[5] domestic violence concerns, a lack of medical care for the children, and inconsistent school attendance for Tahi. From 2019 through 2021, the mother entered six different detoxification programs in an effort to treat her drug addiction. The mother then moved to Alabama in December of 2021. Since the mother has been in Alabama, the mother has struggled with housing instability and, at the time of trial, had moved eight times in eighteen months. These residences have included a domestic violence shelter, an addiction recovery center, a sober living community, and a shelter that provides transitional housing to pregnant women. The mother has also been subjected to domestic violence by romantic partners on numerous occasions, including in the summer of 2022 by the father of her youngest child, whom she gave birth to in April of 2023.

At trial, the mother testified that she is currently not ready for reunification and plans to find stable housing so she can provide for herself, her infant, Tahi, and Ava at some point "down the line." While the mother does not currently reside in a shelter, she testified that six months of rent and

---

[5] The mother testified that she became addicted to oxycodone and Percocet when they were prescribed to her following complications arising from her pregnancy with Ava. The mother's addiction led to her obtaining non-prescribed painkillers from the street, and later using crack cocaine and fentanyl.

accompanying living expenses are funded through a $15,000 grant she received from a mental health association in Alabama. However, the judge did not credit the mother's testimony, finding that the association only covered the mother's first month's rent of $625 and a $250 security deposit. Therefore, because, inter alia, the mother continues to lack the stability to reunify with her children five years after their removal, the judge did not err in concluding that the mother is presently unfit to parent the children, the unfitness is likely to continue into the indefinite future, and that termination of the mother's rights was in the children's best interest.[6] See Adoption of Bea, 97 Mass. App. Ct. at 421-422. See also Adoption of Willow, 433 Mass. 636, 647 (2001) (recognizing importance of stability and that severing legal ties between mother and children is "critical step" in promoting stability in children's lives).

---

[6] Contrary to the mother's argument, we do not read the judge's decision to "overly rely on the Children's wishes," give undue weight to Tahi's testimony that he preferred to stay with his foster mother, or "improperly fault" the mother for opposing Tahi's preferences. See Adoption of Nancy, 443 Mass. 512, 518 (2005), quoting Care & Protection of Georgette, 439 Mass. 28, 36 (2003) (children's preferences "are entitled to weight in custody proceedings"). Cf. Guardianship of Raya, 103 Mass. App. Ct. 531, 535 (2023) (although judge must consider child's preference, "a teenager cannot render her parent unfit by the simple expedient of refusing to engage with that parent").

Furthermore, we disagree with the mother that the trial judge ignored negative evidence about the proposed adoptive placement and therefore failed to make an even-handed assessment of the evidence on the issue of the children's best interests. "The best interests of a child is a question that presents the trial judge with a classic example of a discretionary decision . . . [where] much must be left to the trial judge's experience and judgment" (quotations and citations omitted). Adoption of Hugo, 428 Mass. 219, 225 (1998). Here, the negative evidence that mother references is a G. L. c. 119, § 51A (51A report) report that was filed in 2021 alleging neglect of Ava by her foster sister, who allegedly put hot sauce and detergent in Ava's mouth while she was babysitting her. However, this report was screened out,[7] and a social worker for the department testified that the foster mother complied with the department's recommendation that she should not allow the foster sister to be in a caretaking role for Ava. Therefore, although the judge did not make specific factual findings regarding the allegations within the 51A report or the foster sister's caretaking

---

[7] A 51A report is "screened out" when the department determines that the reported allegations do not meet their criteria for abuse and neglect and therefore will not be investigated further. See Gotay v. Creen, 495 Mass. 537, 539 n.6 (2025).

abilities,[8] there is no evidence to support a conclusion that the judge failed to make an even-handed assessment of the evidence.[9]

3. *Visitation*. The mother finally argues that the trial judge erred by refusing to order posttermination and postadoption visitation with Ava. This argument is also unavailing.

We review a decision declining to order posttermination and postadoption visitation for an abuse of discretion. See *Adoption of Xarissa*, 99 Mass. App. Ct. 610, 623-624 (2021), citing *Adoption of Ilona*, 459 Mass. at 66. In determining the appropriateness of visitation, "a judge should consider, among other factors, whether there is a significant, existing bond with the biological parent whose rights have been terminated" (quotation and citation omitted). *Adoption of Iliona*, *supra* at 63-64. "A judge may also take into account whether a preadoptive family has been identified[,] and, if so, whether

_____

[8] The mother also argues that the judge ignored that the foster mother "had a breakdown" with the foster sister "over the issue of underage marijuana usage." However, the foster mother testified as to why the foster sister left her home and did not cite marijuana usage as a reason.

[9] The mother makes a general argument that the judge failed to fairly assess the evidence because she erroneously discredited favorable testimony from the mother while crediting favorable evidence from the department. However, we afford deference to the trial judge's credibility determinations and find no reason not to do so here. See *Custody of Eleanor*, 414 Mass. 795, 799 (1993).

10

the child has formed strong, nurturing bonds with that family" (quotation and citation omitted). Id. Protecting the best interests of the child is the overriding concern. See Adoption of Terrence, 57 Mass. App. Ct. 832, 839 (2003).

Here, we discern no abuse of discretion in the judge's ultimate refusal to issue an order requiring visitation between the mother and Ava. See Adoption of Xarissa, 99 Mass. App. Ct. at 623-624. At trial, the mother testified that she did not visit with Ava between October 2019 and May 2022.[10] In June 2022, the mother missed a virtual visit with her children one month after her visits had resumed, citing confusion over the time difference between Alabama and Massachusetts, an explanation that was not credited by the judge. The mother also failed to confirm her scheduled August 2022 visit, which had been scheduled by the department. While Ava's visits with the mother increased in 2023, and Ava appeared happy to attend some of the visits, the mother points to no evidence adduced at trial to support a "significant, existing bond" (citation omitted),

---

[10] The mother testified that the department refused to allow her to visit her children for a "large amount of months" because "they could not verify my sobriety because I wasn't engaged in services."

11

Adoption of Ilona, 459 Mass. at 63-64, between the mother and Ava -- a point made by the judge in her conclusions of law.[11]

Conversely, there was substantial evidence that Ava has formed a strong bond with her preadoptive family. See Adoption of Ilona, 459 Mass. at 64. For example, the foster mother testified that Ava has a "typical sibling" relationship with her two biological children and that they all "get along really well." The foster mother also testified that Ava is generally happy and "easygoing" and often sits on her lap to seek comfort. Additionally, a department social worker who observed the foster mother interact with Ava testified that Ava appears very comfortable around the foster mother, and that the foster mother engages in a lot of activities with Ava such as bringing her to sporting events, painting classes, and concerts. Tahi testified that he wishes to stay in the same home as Ava and that Ava also wishes to stay in the home. The foster mother, moreover, also has never refused a visit between the children and the mother. Accordingly, because there was limited evidence of an existing bond between Ava and the mother, the judge did not abuse her discretion by concluding visitation was not in Ava's best

_____

[11] We disagree with the mother that the trial judge failed to distinguish between the bond Tahi has with his mother and the bond Ava has with her mother. Rather, the judge made distinct findings as to each of the child's respective bonds.

12

interests and leaving future visitation to the adoptive parent.[12]
See Adoption of Ilona, supra at 63-64.

                              Decrees affirmed.

                              By the Court (Meade,
                                Desmond & D'Angelo, JJ.[13]),

                              _Paul Little_

                              Clerk


Entered:  April 30, 2025.

---

[12] The judge was entitled to issue a superseding ruling and order of visitation to be encompassed within the final decrees.

[13] The panelists are listed in order of seniority.